7046

## DAVIS BROS. v. BLUE RIDGE RY. CO.

1. CARRIER—EVIDENCE—PAROL.—Where the contract of carriage is silent as to the route, parol evidence is admissible to show an agreement to ship over a certain route.

2. EVIDENCE.—OPINIONS of men who know value of live stock are competent on value of stock in a certain market before and after injury. That plaintiffs have not produced their books to show what the stock cost and for what sold does not affect it, in absence of subpoena *duces tecum* served on them.

3. IBID.—PAROL evidence in this case that carrier had only offered shippers one rate was competent at the time of admission, for then the contract had not been introduced, showing the contrary. But an instruction deprived the plaintiff of any advantage from this evidence.

4. IBID.—PRINCIPAL AND AGENT—DECLARATIONS.—A person selected by the carrier's agent and the consignee to examine stock alleged to

have been injured in shipping, stands in the same relation to both, and his declarations and admissions are not binding on either.

5. CARRIER—FREIGHT—LIVE STOCK.—Where a carrier contracts for exemption from certain of its common law liabilities, including limitation in value of live stock, and then, without necessity, due to unforeseen emergency, deviates from its usual route or the route agreed upon, the special exemptions mentioned in the contract are at an end, and its common law liability attaches, and the carrier by changing the route waives all special stipulations in the contract.

6. IBID.—IBID.—NEGLIGENCE—BURDEN.—Under contract exempting carrier from liability except for negligence the burden is on the carrier to show loss or damage did not result from its negligence.

7. IBID.—WAIVER.—That the agent of carrier requested consignee to take the stock to his barns for the night as railroad stock on his refusal to accept them is some evidence of waiver by the carrier of the stipulation in the shipping contract that notice of claim for damage must be given before removal of stock.

8. CHARGE.—In view of the whole charge the Judge did not charge on the facts when he said the carrier was *prima facie* liable for the dead mules, for he thereby meant to say the carrier was liable for the dead mules unless it shows the loss was not due to its negligence.

9. NONSUIT.—Refusal of nonsuit is not reversible error where defendant afterwards supplies the proof on the absence of which he urged the nonsuit.

Before HYDRICK, J., Anderson, October term, 1907. Affirmed.

Action by Davis Brothers against Blue Ridge Railway Company and Southern Railway Company. From judgment for plaintiffs, defendants appeal.

*Messrs. Bonham, Watkins & Allen,* for appellant, cite: *There being no evidence of waiver, that issue should not have been sent to jury:* 78 S. C., 78, 395. *Value of mules was limited by contract, and no recovery should have been permitted for more:* 79 S. C., 55; 39 S. C., 55.

*Messrs. Padgett & Watkins,* contra, cite: *Parol evidence as to route does not vary contract:* 72 S. C., 364; 66 S. C.,

68. *Opinion evidence as to value of animals was competent here:* 75 S. C., 24; Hutch. on Car., 912; 58 S. C., 250; 12 Ency., 477; 79 S. C., 222. *Witness may state a transaction if he remembers independently of his books:* 58 S. C., 250; 17 Cyc., 474, 481. *Under special contract burden is on carrier to show loss did not occur from his negligence:* 56 S. C., 153; Elliott on R. R., 2403; 16 Am. R., 722; 78 Am. St. R., 686. *Carrier waived right to demand notice of claim for damages before removal of stock:* 36 S. E. R., 348; 24 S. E. R., 704. *Defect in proof before motion for nonsuit may be cured by defendant afterwards offering the proof:* 63 S. C., 567; 68 S. C., 19. *If loss occurs from negligence of carrier, stipulation as to value does not apply:* 56 S. C., 153.

November 16, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiffs delivered to Southern Railway Company at Knoxville, Tennessee, twenty-six mules, to be shipped to Anderson, South Carolina. There was a written contract of shipment, which expressed as its consideration a special freight rate, the regular rate being twenty per cent. higher. The contract contained, among other stipulations, a provision that the shipper would indemnify and save harmless the Southern Railway Company and its connecting carriers against all claims for loss or damage to live stock, except such loss or damage as might be due to negligence of the carrier. Another provision was, that one hundred dollars should be taken to be as much as any mule or horse was reasonably worth, and that no claim for a mule or horse should exceed that sum.

The complaint sets up another contract with the Southern Railway Company, to ship the mules by way of Atlanta instead of by Spartanburg, and alleges that the plaintiffs, relying on this contract, "had a competent and skillful man at Atlanta, Georgia, to attend the unloading, feeding, and

watering and care of the said mules, upon their arrival, en route to their destination." Negligence is thus charged: "That defendants negligently, wilfully and wantonly, and in reckless disregard of plaintiffs' rights, as shippers, transported the said mules by a different and less favorable route than the one directed, and over which they had contracted to transport them, thereby delaying the arrival of the said mules at their destination by several days, and thereby preventing plaintiffs' agent attending to their unloading, feeding, and watering and care, in Atlanta, Ga., and also thereby causing them to be badly shaken and bruised up; and that defendants, further, negligently, wilfully and wantonly, and in reckless disregard of plaintiffs' rights, as shippers, refused to give the said mules proper feed, water and rest on their said journey." It is further alleged that when the mules were unloaded "it was found that one of said mules was dead in the car, and that the others were in such a damaged and weakened condition that two of them died soon thereafter, and the remainder were unfit for plaintiffs' trade and had to be sold at greatly reduced prices, as damaged and inferior stock." The plaintiffs recovered judgment for seven hundred dollars damages.

The questions made by the appeal will be discussed without referring to the exceptions in detail. The first point made is, that the plaintiffs should not have been allowed to prove by parol evidence a contract with Southern Railway Company to ship the mules by Atlanta and not by Spartanburg. It is true there was a written contract of shipment, containing many stipulations, but it was silent as to the route, and, therefore, evidence as to a separate agreement for a particular route was not incompetent, as tending to contradict or vary the written contract. *Chemical Co.* v. *Moore,* 61 S. C., 166; *Ashe* v. *Carolina & N. W. Ry. Co.,* 65 S. C., 134, 43 S. E., 393; *Earle* v. *Owings,* 72 S. C., 362, 51 S. E., 980.

On the issue of the extent to which the value of the mules was impaired, it was competent for the witnesses, Gaillard and Davis, both of whom were stock dealers, to give their estimates. *Millam* v. *So. Ry. Co.,* 58 S. C., 247, 36 S. E., 571; *Sanders* v. *A. C. L. R. R. Co.,* 79 S. C., 219. The measure of damages was the difference between the market value of the mules at Anderson, uninjured by defendant's negligence, and their value at Anderson after injuries due to such negligence. No doubt that the prices which the plaintiffs paid at Knoxville and those which they obtained at Anderson, for the mules, would have had weight with the jury, as factors entering into the estimate of the extent of the injuries, but these prices would not have been conclusive and exclusive of all other factors. If the defendants desired to obtain the benefit of evidence of these prices, they had the right to require the plaintiffs to produce the books by a *subpoena duces tecum.*

The witness, J. M. Davis, was allowed to testify that the Southern Railway had never quoted him any other rate than that which he paid; the object of the testimony being to lay a foundation for the position that, as there was only one rate, there was no consideration for the release of the defendants from liability, except for negligence, and for the agreement limiting the amount of the recovery for each mule to one hundred dollars. This testimony was in direct contradiction of the written contract of shipment, already referred to, but the defendants cannot complain of its admission, because, when the testimony was admitted, the written contract had not been introduced. The Circuit Judge plainly intimated he would not admit the evidence if at variance with the written contract, and said to the defendants' counsel he could then introduce the contract. But defendants' counsel did not accept the suggestion. Afterwards the contract was introduced by defendants, and the Circuit Judge found it expressed on its face that there was a freight rate for stock shipped without the special limita-

tion of liabilty, twenty per cent. higher than that allowed plaintiffs; and in consequence charged the jury the plaintiffs were presumed to know what was in their written contract, and were bound by all its provisions. This instruction, that the defendants were entitled to the benefit of all the limitations of liability, mentioned in the written contract, made valueless to the plaintiffs the testimony that only one rate had been brought to their attention.

The plaintiff, J. M. Davis, testified that he and Anderson, the railroad agent, had requested Mr. Turner, who had special knowledge of such matters, to make an examination of the dead mules. The defendants, claiming that it was to be inferred from this that Turner was plaintiff's agent, offered evidence of Turner's declarations to Dr. Powers as to the manner in which the ribs of one of the mules were fractured. This was hearsay, and, therefore, inadmissible. Turner, under the evidence, was in the same relation to the defendants as to the plaintiffs, and could not bind either by his declarations or admissions.

There was evidence of an oral contract to carry the mules by the Atlanta route, which the plaintiffs regarded safer than the Spartanburg route; and the waybill indicated the Atlanta route. The carriage was by the Spartanburg route. As to this deviation, the defendants submitted this request: "That unless the change of shipment from the route named in the waybill or shipping bill was a proximate cause of injury to the shipment it does not, *per se,* furnish a ground for recovery." The Circuit Judge, in refusing the request, charged as follows: "If the route was deviated from, and damage occurred, the common carrier is liable, unless it is made to appear that damage would have occurred if the route had been followed." The defendants have no ground to complain of this instruction. The rule is well established as to transportation by land as well as water, that where the carrier contracts for exemption from certain of its common law liabilities, and then without neces-

sity, due to unforseen emergency, materially deviates from
its usual route, or the route agreed on, the special exemp-
tions mentioned in the contract are at an end and the
common law liability attached.     The contract for exemption
applies only to the route which the shipper has a right to
assume will be used, because it is the usual one, or because
it has been agreed on.     *Steidl* v. *Minneapolis & St. L. R.
Co.* (Minn), 102 N. W., 701; *Express Co.* v. *Kountze
Bros.,* 75 U. S., 342, 19 L. Ed., 457; *Crossby* v. *Fitch,* 12
Conn., 410, 31 Am. Dec., 745; *Powers* v. *Davenport,* 7
Blackford, 407, 43 Am. Dec., 105; *Phillips* v. *Brigham,* 26
Ga., 617, 71 Am. Dec., 227; *Hand* v. *Baynes,* 41 Wharton,
202, 33 Am. Dec., 54; *Maghee* v. *Camden & A. R. Co.,* 45
N. Y., 515, 6 Am. Rep., 184; *Johnson* v. *New York C. T.
Co.,* 33 N. Y., 610, 88 Am. Dec., 416.     This is not a case
of such slight variation from the route agreed on as not to
be a substantial deviation, like *Marande* v. *Texas & P. R.
Co.,* 184 U. S., 173, 46 L. Ed., 437; nor of deviation ren-
dered necessary by an unforseen emergency, like *Empire
State Cattle Co.* v. *Atchison, T. & S. F. Ry. Co.,* 135 Fed.,
135; and *International & G. N. R. Co.* v. *Wentworth*
(Tex.), 27 S. W., 680.

Under a contract of shipment exempting the carrier from
liability, except for negligence, the burden is on the
defendant to show that loss or damage did not result
from its negligence.     *Crawford* v. *Southern Railway
Company,* 56 S. C., 136, 34 S. E., 80.     The exception
assigning error in the instruction stating this rule is without
foundation.

The contract of shipment contains this provision: "That,
as a condition precedent to any right to recover any damage
for loss or injury to said live stock, notice in writing
of the claim therefor shall be given to the agent
of the carrier actually delivering said live stock,
wherever such delivery may be made; and such notice shall

be so given before said live stock is removed or is intermingled with other live stock."

The presiding Judge instructed the jury, the plaintiffs could not recover unless they had given the required notice, or the defendants had waived the notice. The defendants insist there was no evidence of waiver, and that it was error to charge the jury as if there had been such evidence. J. M. Davis, one of the plaintiffs, thus states the agreement with Anderson, the railroad agent, when the mules were taken from the car: "I told Captain Anderson that I would not receive the stock. It was after dark, and I couldn't tell anything about them, and he said: 'You take them around to the barn, and we will be around in the morning, and you can receive them to-night as railroad stock.'"

There was no definite evidence as to the relinquishment of the railroad company and assumption by the plaintiffs of control of the mules, or of the date of the filing of the claim.

This account of the dealing of the parties, with respect to the custody of the mules, was some evidence that the defendants did not intend to insist on the presentation of the claim before the delivery of the mules. But, aside from this, the evidence of deviation from the route agreed on tended to prove the purpose of the defendants to waive all the special stipulations of the contract of shipment.

It was not a charge on the facts for the Circuit Judge to say to the jury the defendants were *prima facie* liable for the dead mules. Viewed in the light of the remainder of the charge, this meant no more than that the defendants were liable for the dead mules, unless they showed that the loss was not due to their negligence.

The refusal to grant the motion of nonsuit, made on the ground that the plaintiffs having alleged an express contract of shipment had failed to prove it, was not reversible error, because the defendants afterwards

supplied the lacking evidence by introducing the contract. *Hicks* v. *Southern Ry.*, 63 S. C., 539, 41 S. E., 753.

It remains to consider the grounds on which a motion for a new trial was made. The first ground, as to waiver, has already been disposed of. The second is thus stated in the record: "That having charged, at defendants' request, that the plaintiffs were bound by the condition of the live stock contract, whereby defendants' liability, in case of loss or damage, was limited to one hundred dollars per head, plaintiffs should not have recovered more than three hundred dollars for the loss of three mules. J. M. Davis, plaintiff, having testified that the bruises and injuries to the stock was slight, the plaintiffs refused, though they repeatedly requested him, to show by their books what the stock cost, so that the jury might determine. The charge contained this general proposition: That where a shipment is made, and, in consideration of a reduced rate of charges, the liability of the transportation company is limited, the shipper cannot claim more than the limitation in the contract."

But this is to be taken in connection with the other general rule, already stated, which had been adverted to in the charge, that the carrier loses the benefit of special exceptions and exemptions respecting its liability when it deviates from the route agreed on. As there was evidence of such deviation, the jury were not limited to one hundred dollars each, as the special contract valued the mules.

A new trial was asked on the further ground that the evidence tended to show that the mules died of pneumonia and not from injuries received on the car. The evidence as to the cause of death—whether pneumonia, incipient when the mules were shipped, or internal or external injuries received in transportation—was not so conclusive as to warrant the Court in holding that there was no evidence of fatal injuries received on the car. It follows that the judg-

ment of the Circuit, refusing a new trial, cannot be reversed on this ground.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.