15961

JONES v. AMERICAN FIDELITY & CASUALTY CO. *ET AL.*
(48 S. E. (2d) 355)

*Messrs. Babb & Babb,* of Laurens, and *Messrs. Love, Thornton & Blythe,* of Greenville, for Appellants, American Fidelity & Casualty Company, and S. H. Weathers doing business as Johnston Hauling Company, cite:

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, for Respondent, cite:

June 18, 1947.

BAKER, Chief Justice.

This action was instituted for the recovery of damages for the wrongful death of the respondent's intestate, alleged to have resulted from the joint and concurrent negligence of Robert W. Briggs, a taxicab driver, and of the appellant S. H. Weathers, doing business as Johnston Hauling Company. American Fidelity & Casualty Company was joined as a party defendant by reason of its issuance of an insurance policy insuring the public against the negligence of Johnston Hauling Company. A judgment was entered against Briggs, Weathers, doing business as Johnston Hauling Company, and American Fidelity & Casualty Company, in the sum of $3,500.00, but only the two last named have appealed. Therefore, hereafter, we will refer to the appellants as appellant.

The complaint of the respondent alleges that the appellant was guilty of negligence in connection with the collision between his truck and the taxicab of Briggs, which it is claimed resulted in the death of respondent's intestate, in the following particulars:

"1. In parking the Chevrolet trailer on East Main Street in the City of Laurens four (4) feet from the curb without any flares, lights or smudge pots or without giving any sign, notice or warning that said truck was being parked, all of which was known to the defendant and not known to plaintiff's intestate.

"2. In parking said truck for the purpose of repairing a tire without having a look-out or any notice to warn operators of other vehicles on said street that said truck was so parked without taillights on the truck or without any notice or warning to the traveling public, all of which was known to defendant and not known to plaintiff's intestate.

"3. In that the defendant, his agent or employee, invited plaintiff's intestate, an aged and ignorant Negro into a place of danger and peril on a misty, cloudy morning in the early part of the morning without giving him any notice or warning that no signs or notices had been given to the traveling public that said truck was so parked, when said trailer and truck was dark red color and hard to see at said time.

"4. In that defendant, S. H. Weathers, his agents or employees, parked the truck and left same parked on East Main Street in the early hours of the morning on a much traveled street, all of which was known to the defendant, when there were several filling stations less than fifty (50) yards from said place where truck was so parked and when defendant, his agents or employees, could easily have driven entirely off of the Street.

"5. In that said truck owned by the defendant, S. H. Weathers, was parked on East Main Street in the City of Laurens in violation of the statutory laws of the State of South Carolina  *   *   *."

The answer of the appellant admits that at the time and place alleged in the complaint, the respondent's intestate (Lumas Jones) was struck and killed (or soon thereafter died) by a car owned and operated by Briggs, but denies that the injury and death of respondent's intestate were the proximate result of the alleged acts of negligence of the appellant; and denied any negligence. The answer also pleaded assumption of risk by respondent's intestate; and further, "That even if it be admitted for the purpose of this defense only, that the defendant was guilty of one or more of the acts of negligence alleged, the said Lumas Jones was also negligent in placing himself in a position of peril (if such it was), and in not keeping any look-out or giving any warning, or taking any precaution for his own safety, and that the said negligence of Lumas Jones combined and concurred with the alleged negligence of this defendant, if any, as a direct and proximate cause of the injury and death of

said Lumas Jones, and without which they would not have occurred."

At the conclusion of the testimony in behalf of the respondent, the appellant made a motion for a nonsuit which was refused; and when all of the testimony was in, the appellant moved for a direction of verdict in his behalf, which motion was likewise refused.

Following the rendition of the verdict of the jury, appellant made motions for a new trial and for judgment notwithstanding the verdict. These motions were refused.

Appellant's first three exceptions relate to the failure of the trial Judge to grant his motion for a nonsuit, but it is unnecessary that we consider in the decision of this case any exceptions except those relating to the motion for a direction of verdict for the reason that "if there was a failure of evidence to sustain the allegations of negligence at the time the motion for a nonsuit was made, and afterwards, when other testimony was introduced, it made a case proper for the consideration of the jury, the supreme court would not set aside an order refusing a motion for nonsuit, although erroneous when made." *Hicks v. Southern Railway,* 63 S. C. 559, 41 S. E. 753, 754; *Davis Bros. v. Blue Ridge R. Co.,* 81 S. C. 466, 62 S. E. 856; *Hunt v. Atlantic Coast Lumber Corporation,* 101 S. C. 64, 85 S. E. 229, and various other cases prior to, and since the above-cited cases were decided. And if the appellant's motion for a direction of verdict should not have been granted, the amount of the verdict not being questioned as to excessiveness, then the trial Judge should have also refused the last two motions mentioned.

The testimony discloses that on the morning of the accident (September 14, 1945) a truck of the appellant, in the control of and operated by two of his employees, was parked on East Main Street in the City of Laurens so that the rear of the truck (occasionally referred to as a trailer) was immediately under one of the city's street

lights, which light was on the top of an iron post or pole set at the edge of the sidewalk nearest the vehicular portion of the street. The right rear wheel of the truck was, lacking one inch, four feet from the curb of the street, so parked for the purpose of being able to remove therefrom a tire on said wheel which had been punctured. Such manner of parking at the place above indicated was in violation of Section 1623, subsection 38 of the Code of 1942, but as will be obvious when the additional facts of this case are related, such negligence could not possibly have contributed as a proximate cause of the injury and resulting death of the respondent's intestate.

This truck was parked at the place aforesaid, at about daybreak. The driver of the truck and his helper thereon (incidentally the father-in-law of the driver) had succeeded in changing the punctured tire, that is, substituting a spare tire therefor, when it became necessary to lift the heavy punctured tire up into the truck, and as one of the men on the truck had to be up in the truck to receive and place this heavy tire when it was hoisted to such position, more help was needed because neither the driver of the truck nor his helper, without assistance, could lift this heavy tire into the truck. It was then daylight, although the visibility was poor due to a heavy fog amounting to almost a mist. It was at this time that the driver of the truck spied the respondent's intestate, Lumas Jones, on said East Main Street, probably enroute to his work, and requested him to assist in lifting the punctured tire up on the truck. Lumas obligingly assisted the truck driver's helper in handing the tire up to the driver who had gotten in the truck to receive and place the tire on the top of the truck. After placing the tire on the top of the truck, the driver got down on the ground or pavement to the rear of the truck, paid Lumas 25¢ for his services, and Lumas (respondent's intestate) was walking away from the truck to cross the street, and the driver of the truck had closed and was locking the rear doors to the truck, when a taxicab driven by Robert W. Briggs was driven into the

rear of the truck, at least one-half of the front of the taxi-cab going under the truck, crushing unto death the appellant's driver, who was caught between the front of the taxicab and the rear end of the truck, the left side of the front of the taxicab also colliding with respondent's intestate, resulting in his death, apparently then and there. The foregoing statement of the position of respondent's intestate at the time the taxicab struck and killed him is based upon the testimony of the only eye-witness to the tragedy, the truck driver's assistant, or helper, who himself barely had time to jump back towards the sidewalk after seeing the oncoming taxicab, and thus escape death or serious injury; and on the position or place in the street to where respondent's intestate was knocked and fell.

The only positive testimony in the case as to lights being on the truck came from the assistant on the truck of the appellant, a Mr. Maroney, who testified that all lights on the truck, including those in the top, on the corners, and around the edge, were burning, and Mr. Maroney was the respondent's witness. All other testimony in the case on this point tending to a contradiction was of a negative character—that the witness did not see any lights thereon, or did not see any lights, except that of the defendant Briggs, who was, of course, trying to exculpate himself. However, Briggs admits that at the time of the collision he was engaged in wiping from the inside of his windshield the vapor which had formed thereon, which fact could easily have accounted for his failure to see any lights on the truck, especially since he did not see even the truck until the moment of the impact, although it was under a street lamp. It was admitted by Briggs that twice before on that morning, it had been necessary for him to wipe the vapor off the inside of his windshield in order to see how to drive, and, of course, the appellant was not in a position to show additional wipings, if any.

It is an admitted fact that the appellant did not put out any burning smudge pots or flambeaux to warn the public

that his truck was parked under the street light at the time and place hereinabove mentioned, but as aforesaid, the testimony of respondent's witness, Maroney, was that all lights on the truck were burning, and any testimony in the record to the contrary, is of a negative character, except that of Briggs, whose failure to see any lights or even the truck until the collision, is explainable as aforesaid.

It is so obvious from the foregoing facts that the parking of the truck in violation of the statute requiring that vehicles be parked so that all wheels on the right-hand side of such vehicle shall be within 18 inches of the curb, was not a contributing cause to the injury and resulting death of respondent's intestate (nor even to the collision), such act of negligence does not require discussion. The only difference it would have made if the truck had been parked in accord with the statute is that less of the front of the taxicab would have collided with the truck, and more thereof extended into the street, so that in either event the taxicab would have hit respondent's intestate, accepting the testimony of respondent's witness that the intestate was walking away from the left rear end of the truck, crossing the street when hit and killed by the taxicab.

■ Respondent's specification of negligence number 4 does not state actionable negligence, and need not be discussed.

■ The only theory upon which the respondent can recover damages from the appellant for the death of the intestate must necessarily be bottomed upon the alleged negligence of the appellant in parking its truck unlighted and without putting out warning signals such as lighted smudge pots or flambeaux, on a much-traveled street when the visibility was poor due to a heavy fog amounting to practically a misty rain, and soon after daylight. The fact that the truck was first parked on this street, if it be conceded without lights thereon and without other lighted warnings, at the beginning of daybreak, cannot enter into

the appellant's liability for an accident occurring after daylight.

"Negligence in the legal sense is a relative as well as a broad term. Its existence must depend, in each case, upon the particular circumstances which surrounded the parties at the time and place of the occurrence on which the controversy is based. Acts that might be considered prudent in one case may be deemed to be negligent in another. Accordingly, negligence has been defined as the failure to exercise the degree of care demanded by the circumstances, or as the want of that care which the law prescribes under the particular circumstances existing at the time of the act or omission which is involved. Otherwise stated, negligence consists in the failure to exercise the care which an ordinarily prudent person would use under the circumstances in the discharge of the duty then resting upon him". 38 Am. Jur. pp. 642, 643.

We do not think that any inference either in favor of or against the appellant can be drawn from Section 1616, subdivision (26) (b) of the Code, since said statute is applicable solely to a disabled motor truck and its lighting system while on a highway outside of a business or residence section. We therefore come back to the general law that "negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or doing what such a person, under the existing circumstances, would not have done. In other words, the duty is dictated and measured by the exigencies of the occasion".

After mature consideration of all of the circumstances, we have reached the conclusion that it was an issue for the jury to decide whether the appellant used due care, although such issue is close. The question then arises whether there was any causal connection between such alleged negligence and the injury. This question has been simplified for us by the admission in appellant's printed

brief that: "Had Lumas Jones been in the truck, or behind it, or in front of it so that he was killed as a result of the collision, there would be a clear causal connection between his death and the collision."

However, the appellant further states that since respondent's intestate was not crushed between the taxicab and the truck, and there being no contact between him and the truck, but on the contrary, he was walking away from the truck, towards the opposite side of the street, and was to the left of and clear of the side of the appellant's truck when he was hit by the taxicab, there was no causal connection.

We think it is reasonably certain that if the respondent's intestate had not immediately before the collision walked from the rear of the truck where he had assisted in lifting the tire to be placed thereon, he would have been crushed between the truck and the taxicab, and that a reasonable inference could be drawn from the testimony of Mr. Maroney, the only one present who escaped injury and death, and who undertook to warn both the respondent's intestate and the driver of the truck of the imminent danger when he became aware of the fast approaching taxicab, that the respondent's intestate was, at the time of the warning, not yet entirely away from the truck. Therefore, a reasonable inference could have been drawn from the testimony that the failure to place lights or flambeaux to the rear of the truck was a contributing cause.

On the issue of contributory negligence, a reasonable inference could have been drawn from the testimony that at the time of his injury and death the respondent's intestate was confronted with a sudden peril or emergency, and was thus relieved from the exercise of ordinary care. Therefore, this question was properly submitted to the jury.

The appellant does not contend that the negligence of Briggs was an independent, intervening cause. On the con-

trary, his contention is that the alleged negligence of the appellant was never a proximate cause of the death of respondent's intestate, Lumas Jones. We have, therefore, found it unnecessary to discuss the applicability to this case of the cited case of *Locklear v. Southeastern Stages, Inc.,* 193 S. C. 309, 8 S. E. (2d) 321, especially in the light of our holding that the improper parking of the appellant's truck was not a proximate contributing cause. Nor do we find it necessary to discuss the cited cases of *Wright v. South Carolina Power Co.,* 205 S. C. 327, 31 S. E. (2d) 904, and *Ayers v. Atlantic Greyhound Corp.,* 208 S. C. 267, 37 S. E. (2d) 737. All of these cases stem from very different factual situations to those of the instant case.

All exceptions are overruled, and the judgment appealed from is affirmed.

FISHBURNE and TAYLOR, J.J., concur.

STUKES and OXNER, J.J., concur in result.