Barry Dean ROGERS, by his Guardian
ad Litem, Luther James Rogers,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 11699.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 8, 1968.

Decided May 20, 1968.

C. Weston Houck, Florence, S. C. (R. A. Palmer and H. E. Yarborough, Jr., Florence, S. C., on the brief), for appellant.

Wistar D. Stuckey, Asst. U. S. Atty. (Terrell L. Glenn, U. S. Atty., on the brief), for appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

In a peculiar and not entirely undisputed fact situation involving Appellant Rogers' claim under the Federal Tort Claims Act, the district judge entered summary judgment for the Government. We think that further development of the facts and surrounding circumstances would assist in making correct determinations of difficult questions of law, and we reverse and remand for trial. See 3 Barron & Holtzoff § 1234 (1958).

While awaiting trial on a charge of interstate transportation of a stolen automobile, the 17-year-old plaintiff, Rogers (probationer), was confined in the Sumter, South Carolina, County Jail and there met Henry Boone Brabham, a resident of Sumter and a frequent visitor to the jail.[1] In the past Brabham had been hired by Deputy Marshal Gaddy as a guard to assist in the transportation of prisoners, but this occasional employment had been discontinued when Gaddy learned that Brabham had been indicted for burning an automobile and had been charged with chaining and physically abusing an airman.[2] Rogers testified that while he was in jail, Brabham brought fried chicken to him and the other prisoners, on one occasion offered to let Rogers spend the night with him if he were paroled, and "treated us like he was our own father."

On July 22, 1964, John Rowland, the United States Marshal for the Eastern District of South Carolina, and some of his deputies transported Rogers from the Sumter County Jail to federal court in Columbia, South Carolina, where Rogers was convicted and placed on probation. When it was brought to the court's attention that Rogers had no way to return to his home in Loris, South Carolina, an order was entered as set out in the margin.[3] Marshal Rowland then took Rogers in his car to Sumter.

Once back in Sumter, it was discovered that there were no more buses scheduled to Loris. The marshal gave Rogers a

---

1. The Sumter County Jail was used for federal prisoners by virtue of a written contract.

2. Gaddy also testified that he had talked with the Sheriff of Sumter County and with Jailer Beatson about Brabham, but when asked if the sheriff and jailer were aware of Brabham's reputation as a sexual pervert, Gaddy replied, "I don't know."

3. "IT IS ORDERED that the United States Marshal for the Eastern District

Transportation Request with which to get a bus ticket the next day.

As to the furnishing of subsistence, the evidence is either conflicting or unclear. Rogers asserts that, upon reaching the jail, Rowland asked if he had any friends with whom he could spend the night. Rogers told Rowland of Brabham's offer and was given permission to go with Brabham when he came; in the meantime Jailer Beatson locked the boy in a cell. It was Rogers' understanding that he could either go with Brabham or spend the night in jail. On the other hand, Rowland claims that Rogers said that he wanted to spend the night with a friend whose name Rowland couldn't recall,[4] that he told the jailer to let the boy go with the friend if he could get in touch with him and if not, that Rogers could spend the night in jail.

What occurred thereafter is not disputed. Jailer Beatson telephoned Brabham; about 7 p. m. Brabham arrived at the jail and took the boy to his home. That night, while the two of them were watching television, Brabham went to the door, locked it, then turned to Rogers remarking that he should be punished for the theft. He forced Rogers to remove his clothing, tied his hands behind him, and beat him with a metal-bradded belt. Between beatings, turpentine was poured into the wounds. Sometime later Rogers' hands were handcuffed, his feet were chained, and he was forced into a tub of scalding water. The torture continued until early morning when a police officer, apparently called by Brabham, arrived and took Rogers to a hospital.

■■ When an agency of the United States voluntarily undertakes a task, it can be held to have accepted the duty of performing that task with due care. "This idea of voluntary assumption of duty by affirmative conduct runs through a variety of cases. Just when the duty is undertaken, when it ends and what conduct is required, are nowhere clearly defined, and perhaps cannot be." Prosser, Torts § 54 at 340 (3d ed. 1964) ; see also, 38 Am.Jur. Negligence § 17 (1941). In an analogous situation involving the failure of Coast Guard personnel to use due care in the performance of their assigned tasks, the Supreme Court noted that the Coast Guard had no obligation to establish a particular lighthouse, but if it did, it had the duty to use due care to keep it working and give warning. Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Moreover, the South Carolina Supreme Court has, itself, recognized that "duty is dictated and measured by the exigencies of the occasion." Jones v. American Fidelity and Casualty Co., 210 S.C. 470, 478, 43 S.E.2d 355, 359 (1947). We think a full development of the facts may support or even require the conclusion that the marshal assumed a duty, perhaps quasi-parental, toward this particular young probationer.

■■ Alternatively, it is urged that the marshal was under a duty to the probationer derived from the court order. Ordinarily, absent a court order, the United States has no affirmative duty to provide transportation and subsistence for probationers. But 18 U.S.C.A. § 4283 specifically authorized the court to assume the responsibility and direct its execution. When the district court issued its order, in then became the duty of the marshal to carry it out. Whether his duty ran to the probationer—in addition to the court—and carried with it an

---

of South Carolina shall provide the probationer with transportation, in accordance with 18 U.S.C. § 4283, from Columbia, South Carolina to Loris, South Carolina *together with a reasonable amount for subsistence.*" (Emphasis added.)

4. The defendant has consistently argued that Rowland was never told the name of Rogers' friend; this contention is at least questionable in light of a statement in Rowland's deposition, " * * * I walked over to the chief jailer Beatson and told him this boy had met a friend while in jail, and he wanted to get in touch with him. *I don't recall the name O—if he called the name, I don't recall it.*"

obligation to execute with due care not to harm the probationer can better be redetermined after a plenary development of the facts.

If it should be determined that there was a "duty," see Prosser, Torts § 53·at 332 (3d ed. 1964), then the district court will have to determine whether the duty was breached. The answer will depend, in part, upon whether an agent of the United States can be charged with knowledge both of Brabham's unsavory reputation and of the fact that Brabham was the acquaintance with whom Rogers intended to spend the night. Whether Marshal Rowland knew of Rogers' plans is disputed and is, of course, a genuine and material issue of fact. But it is not disputed that Brabham was permitted to frequent the jail, and knowledge of Brabham's reputation was shown, by the deposition of Deputy Marshal Gaddy, to have extended to the marshal's office. On remand, the district court should consider, among other questions whether (a) Marshal Rowland knew or should have known in the exercise of due care of Brabham's reputation and (b) whether the conduct of Jailer Beatson, was made the telephone contact with Brabham and who seemingly knew or should have known of Brabham's perversion, can be imputed to the United States in view of the contract providing for the keeping of federal prisoners in the Sumter County Jail.

Depending upon his ultimate findings of fact, we think the trial judge should consider whether or not the marshal exercised less than ordinary care when he failed to make perfectly clear to the probationer the choices that were properly open to him under the order of the court—spending the night in jail, telephoning his parents or other friends in Loris to come for him, or renting a hotel room for the night at the government's expense.[5] Certainly if Jailer Beatson is found to be an agent of the United States and if it is further found that he knew of Brabham's reputation, it would seem to follow that due care required him to warn Rogers of the danger of accompanying Brabham.

We have carefully considered the government's contention that this case is within one of the exceptions to governmental liability found in the statute. We think 28 U.S.C.A. § 2680(h) is inapplicable. If there is a valid claim here, it is founded on negligence even though assault or false imprisonment may be collaterally involved. See Panella v. United States, 216 F.2d 622 (2d Cir. 1964). And clearly no discretionary function is here involved so as to bring the case within 28 U.S.C.A. § 2680(a).

For the reasons stated, we think that the entry of summary judgment for the defendant in this case was improper.

Reversed.

WINTER, Circuit Judge (concurring in part and dissenting in part):

I agree that the judgment should be reversed and the case remanded for plenary hearing to determine if the Marshal assumed a duty toward the plaintiff, the breach of which gave rise to liability on the part of the United States. I disagree, however, that, on the facts of this case not in dispute, there could be any duty to the plaintiff arising out of 18 U.S.C.A. § 4283, or the order entered thereunder, which was breached. On this point I am content to rest on the conclusions of the able district judge, as expressed in his opinion.[*] Accordingly, I would limit the scope of the remand to an exploration of the question of whether there was a lack of ordinary care in the performance of an assumed duty.

---

5. The statutes provides for subsistence expenses not to exceed $30. 18 U.S.C.A. § 4283. It does not appear that the probationer ever knew that the judge had, in effect, directed the marshal to provide a hotel room, not a jail cell, as lodging en route.

* Rogers v. United States, 267 F.Supp. 25 (D.S.C. 1967).