Ronald **GIBSON**, Appellant,

v.

**UNITED STATES** of America.

No. 19253.

United States Court of Appeals,
*Third Circuit.*

Argued Sept. 16, 1971.

Decided March 30, 1972.

S. M. Chris Franzblau, Beckerman, Franzblau & Cohen, Newark, N. J., for appellant.

Michael Kimmel, Department of Justice, Civil Division, Washington, D. C., for appellee.

Before BIGGS, ADAMS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

■ This appeal is from an order dismissing with prejudice an action brought against the United States under the Federal Tort Claims Act, for personal injuries inflicted by the alleged negligence and omissions of Government employees. The district court apparently dismissed the complaint for lack of jurisdiction over the subject matter, believing the cause of action came within the exception provided by 28 U.S.C. § 2680(h).[1]

The complaint makes the following allegations relevant to our decision: The appellant, Gibson, a college graduate, 26 years of age, was employed by the Federal Electric Co. to train Job Corps enrollees at the Raritan Arsenal in Edison,

1. The district court's treatment of appellee's motion to dismiss under Fed.R.Civ.P. 12 (b) (1) requires elaboration. Both the district court's opinion, and the order filed pursuant to that opinion, speak of dismissal "on the ground that the Court lacks jurisdiction over the subject matter thereof." However, simultaneously, the district court noted that it was granting the motion under Rule 12(b) (6), failure to state a claim upon which relief can be granted. Moreover, there is some indication that the court may have treated the motion to dismiss as one for summary judgment under Rule 56, as allowed under Rule 12(b) (6).

It seems settled that any objection raised by the defendant which is based upon the exceptions listed in § 2680 goes to the issue of jurisdiction over the subject matter and hence to Rule 12(b) (1). Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Konecny v. United States, 388 F.2d 59 (8th Cir. 1967); Sanchez Tapia v. United States, 338 F.2d 416 (2d Cir. 1964); *Contra* Collins v. United States, 259 F. Supp. 363 (E.D.Pa.1966).

We treat the motion to dismiss in the terms in which it was presented to the district court, as a motion under Rule 12(b) (1).

New Jersey. One Jessie, a juvenile delinquent with a known addiction to narcotics, was a Job Corps enrollee employed and housed by the United States at the arsenal. On November 5, 1966, Jessie, while under the influence of narcotics and engaged in his employment with the United States, plunged a screwdriver through the appellant's temple while the latter was engaged in the performance of his duties as a Job Corps leader and instructor. The United States knew its enrollees were dangerously sick, mentally and morally, and was under a duty to take reasonable precautions and provide reasonable safety measures for the protection of such people as the appellant, who were required, as Job Corps leaders and instructors, to live and work with these enrollees. The United States was negligent in failing to take reasonable measures for appellant's safety, thereby causing him to suffer injuries for which he seeks damages in the sum of $500,000.

Appellant claims to have presented for filing in the district court a "supplemental factual statement" in opposition to the Government's motion to dismiss his complaint. At that time, he was represented by an attorney who subsequently withdrew from the practice of law. His present counsel, substituted by order of the district court on July 27, 1970, has advised this court that the supplemental factual statement attached to the plaintiff's brief in the district court contained a request that it be *filed*. The docket entries do not reveal that it was filed and there is no indication of district court action concerning this statement.

The supplemental factual statement makes the following allegations: Prior to the attack upon the appellant, there had been incidents at the arsenal of boys hitting other trainees with steel pipes and of "full-blown riots." Employees of the Office of Economic Opportunity had day-to-day authority over the process of selecting, controlling, disciplining and eliminating trainees. They were aware that the Federal Electric Co., the contractor conducting the program, did not have authority or equipment to prevent physical harm to the teachers. Personnel of the Office of Economic Opportunity at the *operational level* were given reports of serious incidents which preceded appellant's injuries, including the riots, drug addiction of trainees, and the acceptance into the Job Corps program at the arsenal, of trainees who were vicious, brutal juvenile offenders and drug addicts. (Emphasis supplied.)

In addition to a substantial denial of the allegations of the complaint, the appellee pleaded certain affirmative defenses, the most important of which were:

(1) The plaintiff's claim arises out of an assault and battery and is therefore barred by 28 U.S.C. § 2680(h);[2] and

(2) The plaintiff's claim is based on a discretionary duty or function and is barred by 28 U.S.C. § 2680(a).[3]

The district court sustained the motion to dismiss under the provisions of § 2680(h), as a claim arising out of assault and battery. We believe that this was error.

Since this matter comes to us on an appeal from a motion to dismiss we take as true all of the allegations of the complaint. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030

---

2. 28 U.S.C. § 2680(h) reads: "(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

3. 28 U.S.C. § 2680(a) provides: "(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

(1964). Although the supplemental statement of facts has not been incorporated into the pleadings, we will, in view of the decision we reach, treat the averments therein as properly pleaded and true. The supplemental factual statement merely elaborates, but does not change the theory on which the complaint was brought. It does not introduce a new cause of action. Under these circumstances, we think the interests of justice would best be served by treating the supplemental factual statement for the purpose of this appeal as if it were part of the record, and specifically granting leave to amend on remand. *cf.* Jones v. Freeman, 400 F.2d 383, 387 (8th Cir. 1968); Kaufman v. Western Union Telegraph Co., 224 F.2d 723, 725 (5th Cir. 1955); Brooks v. Yawkey, 200 F.2d 663 (1st Cir. 1953).

Except for certain areas of tort law specifically excluded, the Federal Tort Claims Act was enacted to provide a judicial remedy for those who suffer injury or damage as a result of the negligence or misconduct of an employee of the United States. In the case *sub judice,* liability is asserted against the United States because it affirmatively undertook a training program for dangerous, mentally ill young men who were known to be violent juvenile offenders and drug addicts, placed them under its control and custody on a day-to-day basis, but failed to exercise reasonable care by providing safety measures for the protection of instructors required to live and work with such trainees.

Ordinarily, there is no general duty to act for the protection of others. However, having undertaken a program of instruction, rehabilitation and care for these trainees, was the United States, or its agency in charge of the program under the affirmative duty to prevent those persons, recruited to train and instruct, from sustaining harm at the hands of these dangerous and violence prone trainees? We think it was. "When an agency of the United States voluntarily undertakes a task, it can be held to have accepted the duty of performing that task with due care." Rogers v. United States, 397 F.2d 12, 14 (4th Cir. 1968).

While it is acknowledged that the Office of Economic Opportunity entered into a contract with the Federal Electric Co. to conduct the program, appellant alleges that Federal Electric had no authority or equipment to prevent physical harm to the teachers. He asserts that it was the Office of Economic Opportunity who had the day-to-day authority over the process of selecting, controlling and disciplining the trainees. If the evidence sustains these allegations, it would appear then that the United States undertook certain duties with respect to these trainees and that it had the responsibility of performing them with due care. The exercise of due care under such circumstances might well require reasonable safety measures on the part of operational personnel in the program for the safety of those instructing the trainees.

> One who takes charge of a third person whom he knows or who should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.
>
> Restatement of Torts, 2d, § 319.

According to Prosser, Torts (2d Ed. 1955), the general duty which arises in many relationships to take reasonable precautions for the safety of others "may include the obligation to exercise control over the conduct of third persons." Prosser, supra, at 188. In the case *sub judice,* the duty to control the conduct of the trainees is even stronger since they were allegedly employees of the United States at the time and definitely under its control.

While there are ample allegations in the complaint of a breach of duty by the United States because of a failure to exercise due care for the safety of instructors in the training program, the Government contends that the district court properly dismissed the complaint for

lack of jurisdiction under Section 2680(h), the assault and battery exception of the Federal Tort Claims Act.

■ We disagree for two reasons: First, the attack upon Gibson was a foreseeable consequence of the Government's failure to exercise due care *under the circumstances* and, therefore, it *is not such an intervening act as will sever the necessary causal relation between the negligence and the appellant's injuries.*

> Here the very risk which constitutes the defendant's negligence is the probability of such action. It is clear that when such action occurs, it should not insulate the defendant's negligence under the causation formula. In other words, it is clearly unsound to afford immunity to a negligent defendant because the intervening force, the very anticipation of which made his conduct negligent, has brought about the expected harm.[4]

Under the appellant's allegations, the injury arose out of the basic negligence of the United States and the attack was the foreseeable consequence of the original misconduct. "That the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. *Breach of that duty would be negligence. . . ."* (Emphasis supplied.) Lillie v. Thompson, 332 U.S. 459, 462, 68 S.Ct. 140, 142, 92 L.Ed. 73 (1947); Harrison v. Missouri Pacific R. Co., 372 U.S. 248, 83 S. Ct. 690, 9 L.Ed.2d 711 (1962). Under such circumstances, the attack was not an intervening act and the tort did not arise out of the assault and battery. It had its roots in the Government's negligence.

■ Second, we do not believe that Congress intended that the exception would apply to the facts at hand. Section 2680(h) addresses itself primarily to intentional torts for which Congress was unwilling to assume liability. "This section [28 U.S.C. § 2680] specifies types of claims which would not be covered by this title. They include . . . *deliberate torts* such as assault and battery; and others. . . ." (Emphasis supplied.) S.Rep. No. 1400, 79th Cong., 2d Sess., at 33 (1946)[5] Jayson, Handling Federal Tort Claims, Vol. 2, Sec. 260.01 n. 1.

Does the injury sustained by Gibson arise out of an assault and battery? Assault and battery by definition are in-

---

4. Harper and Kime, The Duty to Control the Conduct of Another, 43 Yale L.J. 886, 898 (1934).

5. In the hearings before the Committee on the Judiciary, House of Representatives, the following colloquy occurred with respect to this exception:

   "MR. ROBSION. On that point of deliberate assault that is where some agent of the Government gets in a fight with some fellow?

   MR. SHEA. Yes.

   MR. ROBSION. And socks him?

   MR. SHEA. That is right.

   MR. CRAVENS. Assume a C.C.C. automobile runs into a man and damages him then under the common law, where that still prevails, is not that considered an assault and is not the action based on assault and battery?

   MR. SHEA. I should think not. I should think under old common law rather that would be trespass on the case.

   MR. CRAVENS. Trespass on the case?

   MR. SHEA. Yes.

   MR. CRAVENS. I do not remember those things very well, but it seems to me there are some cases predicated on assault and battery even though they were personal injury cases.

   MR. SHEA. No; I think under common-law pleading you have the same writ, but it makes a distinction between an assault and negligence.

   MR. CRAVENS. This refers to a deliberate assault?

   MR. SHEA. That is right.

   MR. CRAVENS. If he hit someone deliberately?

   MR. SHEA. That is right.

   MR. CRAVENS. It is not intended to exclude negligent assaults?

   MR. SHEA. No. *An injury caused by negligence could be considered under the bill."* (Emphasis supplied.) Hearings on H.R. 5373 and H.R. 6463 Before the House Committee of the Judi-

tentional acts. Intention is the very essence of the tortious act.[6] Congress intended to exclude liability for injuries caused by intentional misconduct[7] and not for negligence. This is consistent with the strong public policy expressed in the statute to waive immunity for injuries caused by negligence of employees and to except claims arising out of assault or battery. In the case *sub judice,* the allegations are that when Jessie plunged the screwdriver through Gibson's temple, Jessie was "then and there under the influence of narcotics." If the effects of the narcotics were powerful enough to deprive him of control of his mental powers, *the requisite mental element* necessary for the battery may well be absent. In any event, this would be a question of fact for the jury and not a matter of law determinable on the pleadings.

The district court believed that Collins v. United States, 259 F.Supp. 363 (E.D. Pa. 1966), settled the issue. *Collins* was an action predicated on the alleged negligence of the Government in hiring and retaining in its employ an employee who "pushed, hit and struck" the plaintiff. The complaint alleged that the Government was negligent in hiring and retaining an employee whom it knew or should have known had "malicious propensities."

We believe that *Collins* is inapposite on its facts. There are a number of distinguishing factors separating it from the case *sub judice.* It is the classic case of an intentional assault and battery except for the conclusory allegation that the Government knew or should have known the postal clerk had "malicious propensities." This conclusory statement, however, is based upon the very assault for which the action is brought. In this case, we are concerned with trainees who are drug addicts and have behaviorial problems, under the care of the Government in a controlled environment and program designed to rehabilitate them. The Government accepted the duty of caring for and controlling them knowing of their drug addiction and instability. It was obliged to exercise reasonable care to prevent them from harming others.

One comment should be made upon other cases, in other courts, which have been presented to us as bearing upon our decision. Although recovery was allowed notwithstanding the commission of an assault and battery, in several of these cases the assault exception was held inapplicable because the assaults were committed by third parties who were not Government employees.[8] None of these cases found it necessary to consider facts analogous to those presented

---

ciary, 77th Cong., 2nd Sess., ser. 13, at 33, 34 (1942).

6. "An essential difference between assault and battery, on the one hand, and negligence, on the other, is this element of intent. The essence of negligence is unintentional injury to another." Jayson, Handling Federal Tort Claims, Vol. 2, 260.02.

7. "At common law, the remedy for the *intentional* infliction of bodily harm resulting directly from the actor's conduct was redressed by an action of trespass for battery. Therefore, bodily harm so caused and, indeed, the act which caused it were both customarily called a battery." (Emphasis supplied.) Restatement of Torts, 2d, Vol. 1, Ch. 2, p. 23.

8. Muniz v. United States, 305 F.2d 285, 287 (2d Cir. 1962), aff'd United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), allowed suit for

damages by a federal prisoner against the United States based on negligence in handling of prisoners. Although the injuries arose out of an assault and battery, by one prisoner upon another, the circuit court held that the assault exception did not apply "to assaults by third parties which the government negligently fails to prevent." Rogers v. United States, 397 F.2d 12 (4th Cir. 1968), likewise involved an assault upon a prisoner by a third party, not a Government employee. In Underwood v. United States, 356 F.2d 92, 100 (5th Cir., 1966), summary judgment for the Government was reversed where an airman who had been hospitalized for mental illness shot and killed his wife. He was not on duty when he shot his wife and the "United States . . . did not rely on the exception of a 'claim arising out of assault' embodied in 28 U.S.C.A. § 2680 (h)."

in this proceeding. In one case, however, the Fourth Circuit, did not rely on the third party situation but held the assault exception did not apply since the claim was "founded on negligence even though assault or false imprisonment may be collaterally involved." Rogers v. United States, supra, 397 F.2d at 15.

There remains the problem of whether the action should still be dismissed because of the bar of § 2680(a), the discretionary exception of the Tort Claims Act. We note, initially, that the district court did not find it necessary to reach this issue. Thus, the parties have not had an opportunity to amend their pleadings after guidance by the district court. This raises some question as to whether it would be proper to dismiss, on this issue, at this point. *See* 2A Moore's Federal Practice ¶ 12.14.

█ Moreover, we believe that considering the supplementary statement as part of the pleadings, it would be improper to dismiss this case. The facts thus pleaded show negligence on the *operational* level. Appellant has alleged facts which point toward a growing danger within this particular installation. He draws attention to antecedent "riots, and stabbings," and to a comprehensive security program submitted in response to this growing danger but ignored. These allegations are not directed to the general guidelines along which the program was developed but to misconduct at the operational level.

> The application of . . . policy *to the individual case* is an administrative decision at the operational level which if negligently done will make the Government liable . . . .
> (Emphasis supplied.)

White v. United States, 317 F.2d 13, 17 (4th Cir. 1963); United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962), and cases cited therein.

None of the other defenses pleaded by appellee before the district court have been briefed or argued before this court. Nor has the district court made a ruling on them.

The order of the district court will be reversed, and the case remanded with leave to amend for further proceedings not inconsistent with this opinion.