**Norma DENTON, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 78–3689.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 15, 1980.

Decided Feb. 5, 1981.

Alan L. Froelich, Wendells, Froelich, Power & Lakefish, Seattle, Wash., for plaintiff-appellant.

Robert M. Hollis, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SKOPIL and ALARCON, Circuit Judges, and BURKE *, District Judge.

ALARCON, Circuit Judge:

Plaintiff Norma Denton appeals from the district court's denial of her motion for summary judgment and grant of defendant's motion for summary judgment. We affirm.

This case chronicles the Kafkaesque plight of a hapless citizen whose claims to widow's benefits regrettably must be denied despite clear evidence that she has been the victim of bureaucratic error.

Appellant is the widow of Lieutenant Colonel Charles K. Denton. In 1962, Lt. Col. Denton transferred to the Retired Reserve of the United States Army, after having completed 28 years of military service with the National Guard. Had he lived, Lt. Col. Denton would have been eligible for retirement pay at age 60; Lt. Col. Denton died in 1975 at age 57. His widow was not entitled to any survivorship benefits because Lt. Col. Denton died before he was eligible to draw retirement pay.

In 1974, Congress amended the Veterans' Insurance Act to extend coverage under Servicemen's Group Life Insurance (SGLI) to individuals such as Lt. Col. Denton, who were members of the Retired Reserve of a uniformed service, who had completed at least 20 years of creditable service, but who had not yet received the first increment of

* The Honorable Lloyd H. Burke, United States District Judge for the Northern District of California, sitting by designation.

retirement pay or reached the age of 61. Veterans' Insurance Act of 1974, § 4(1), 38 U.S.C. § 767(a)(3) (1977).[1] All such individuals were entitled to purchase a SGLI policy providing full–time term life insurance coverage up to a maximum of $20,000.[2]

Following enactment of the Veterans' Insurance Act of 1974, the Army attempted to notify all Retired Reservists eligible under the amended SGLI. In excess of 43,000 retired reservists were initially identified from the computer files as potentially eligible. The Army further refined the list by a review of the personnel files. The ultimate mailing was sent to more than 31,000 Retired Reservists. In addition, the Department of Defense and the Veterans' Administration distributed information about SGLI to various military organizations, veterans' organizations and Veterans' Administration regional offices.

Lt. Col. Denton did not receive the Army mailing because the data maintained in his computer file erroneously indicated that he was already a recipient of retired pay, and was therefore ineligible for SGLI coverage.

Following her husband's death, appellant filed suit against the United States in the Court of Claims to recover the $20,000 insurance proceeds to which she would have been entitled had her husband applied for full SGLI coverage and named her as beneficiary. She agreed to a set–off for the premiums her husband would have paid. The Court of Claims dismissed the suit for lack of subject matter jurisdiction. Thereafter, the Court of Claims, pursuant to 28 U.S.C. § 1506 (1977), transferred appellant's suit to the District Court for the Western District of Washington.

In the district court, appellant contended that the United States was liable for the $20,000 because the government had breached a statutory duty to notify her late husband of his SGLI eligibility. In the alternative, appellant contended that even if the United States had no statutory duty to notify her husband, it had voluntarily undertaken to notify Retired Reservists of their eligibility, and was therefore liable for any negligence in carrying out the task.

The district court found that Lt. Col. Denton would have purchased full SGLI coverage had he been aware of his eligibility. The court held, however, that the United States had no statutory duty to notify Lt. Col. Denton of his insurance eligibility, as well as no duty to perform the voluntarily undertaken task of notification with due care. Accordingly, the court dismissed appellant's suit for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6).

Both parties in the action below proceeded upon the assumption that the district court had jurisdiction under 38 U.S.C. § 775

---

1. Section 767(a)(3) provides:

    (a) Any policy of insurance . . . shall automatically insure against death—
    (3) any member assigned to, or who upon application would be eligible for assignment to, the Retired Reserve of a uniformed service who meets the qualifications set forth in section 765(5)(C) of the title.
    Section 765(5)(C) provides:
    (5) The term "member" means—
    (C) a person assigned to, or who upon application would be eligible for assignment to, the Retired Reserve of a uniformed service who has not yet received the first increment of retirement pay or has not yet reached sixty–one years of age and has completed at least twenty years of satisfactory service creditable for retirement purposes under chapter 67 of title 10.
    A Retired Reservist is not covered under SGLI until he submits the initial premium. 38 U.S.C. § 768(a)(5) (1977); 38 C.F.R. § 9.3(a) (1979).

2. According to the Senate Report on the Veterans' Insurance Act of 1974, one of the major purposes of the law was to assist individuals in Lt. Col. Denton's position:

    Presently, members of the Retired Reserve have no eligibility under SGLI. Often a Guardsman or Reservist retires at age 45 having completed 20 years of service yet is ineligible for any retirement pay until he is 60. This measure would provide full–time coverage up to $20,000 during the interim period between his 45th and 60th birthdays and provide a measure of protection for the Retired Reservist's family. Representatives of the Department of Defense and members of various National Guard units throughout the United States testified as to a number of tragic circumstances occurring with respect to Retired Reservists who had not yet reached the age of 60 and qualified for retirement pay and survivor benefits. [1974] U.S. Code Cong. & Ad.News 3125.

(1977). That section of the Veterans' Benefits Statute states: "The district courts of the United States shall have original jurisdiction of any civil action or claim against the United States founded upon this subchapter." [Subchapter III, Servicemen's Group Life Insurance.]

We hold that jurisdiction under this statute was improper because the government's breach of duty, if any, was not the kind for which the United States is amenable to suit under 38 U.S.C. § 775.

Neither the Veterans' Insurance Act of 1974 nor the regulations promulgated under it (38 C.F.R. § 9.1 *et seq.* (1979)) sets forth an explicit duty to notify Retired Reservists of their SGLI eligibility. Nor do we believe that the legislative history can plausibly be read as imposing such a duty on the United States.[3]

The United States' consent to be sued under § 775 extends only to actions alleging breach of an explicit or implicit duty under the SGLI subchapter. Nothing in the language of the SGLI subchapter nor in the legislative history supports appellant's contention that the statute imposed a duty of notification on the United States. Therefore, appellant's claim was not "founded upon" the SGLI subchapter and jurisdiction under § 775 was improper.

We emphasize that we do not hold that the United States had no duty to notify Lt. Col. Denton of his SGLI eligibility or that the United States, once having undertaken to notify Retired Reservists of their SGLI eligibility, cannot be held liable on a duty voluntarily undertaken theory. We need not decide those questions,[4] for if the government has breached any duty here, it is a common law tort duty for which the

---

3. Appellant points to a letter in the Senate Report on the Veterans' Insurance Act of 1974 as evidence of Congress' intent to impose a duty of notification on the government. The letter, written by Donald Johnson, then head of the Veterans' Administration, states:

   In carrying out the bill's provisions, the Veterans' Administration, and the primary insurer, would have to rely upon the uniformed services to identify those individuals who qualify for full–time coverage, to remit the premium charges for members of the Ready Reserve, to notify the insurer and the member when the member is assigned to the Retired Reserve.

   [1974] U.S.Code Cong. & Ad.News at 3153.
   Since the United States does not ordinarily bear the responsibility of notifying classes of citizens of the existence of legislation that might affect them—outside of the public record of the legislative process and the publication of the United States Code—we believe that if Congress wished to impose such a duty, it would have done so in more explicit terms. As it reads, Johnson's letter evidences little more than an acknowledgement that the VA had no independent information about the identity of individuals assigned to the Ready Reserve.

4. Several cases involving private pensions might support appellant's argument that the government owed her late husband a duty of notice. In these cases, the trustee modified the requirements for eligibility for pension benefits without giving employees notice of the change. Although the pension plans contained no requirement that beneficiaries be notified of changes in eligibility requirements, the courts found that the principles of fundamental fair-

ness required that notice be given. *See Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 206 (2d Cir. 1980); *Argo v. Joint Plumbing Indus. Bd.*, 623 F.2d 207, 212 (2d Cir. 1980); *Burroughs v. Bd. of Trustees*, 542 F.2d 1128, 1131 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Harris v. Joint Plumbing Indus. Bd.*, 474 F.Supp. 1284, 1289 (S.D.N.Y.1979), *aff'd mem.*, 628 F.2d 1345 (2d Cir. 1980). These cases, however, do not detail what kind of notice is proper, merely saying that "adequate notice" is required. *See, e.g., Harris v. Joint Plumbing Indus. Bd.*, 474 F.Supp. at 1289.

Another line of cases, litigated under the Federal Tort Claims Act, might support appellant's contention that even if the government had no duty to provide notification, liability could nevertheless be predicated on the fact that the government voluntarily assumed the duty, and therefore had an obligation to perform it with due care. *See, e.g., Quinones v. United States*, 492 F.2d 1269, 1278 (3d Cir. 1974); *Gibson v. United States*, 457 F.2d 1391, 1394 (3d Cir. 1972); *Rogers v. United States*, 397 F.2d 12, 14 (4th Cir. 1968). These cases are grounded on the logic that "[w]hen an agency of the United States voluntarily undertakes a task, it can be held to have accepted the duty of performing that task with due care." *Rogers v. United States*, 397 F.2d at 14. *Cf. Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (the Coast Guard had no obligation to establish a particular light house, but if it did, it had a duty to use due care to keep it working).

United States is only amenable to suit under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2674–2680 (1977).[5]

Many strong policy arguments could be made for imposing a duty on the United States in this case.[6] It is indeed unfortunate that under the theory urged by appellant, we are constrained to deny the relief requested.

AFFIRMED.

---

**5.** Any suit by appellant under the Federal Tort Claims Act may be barred because it appears from the record that she failed to exhaust her administrative remedies as required by statute. 28 U.S.C. § 2675(a) (1977). A tort claim against the United States is forever barred unless it is presented in writing to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b) (1977). The fact that appellant has instituted this action against the United States on the same claim does not interrupt or toll the limitations period. *Humphreys v. United States*, 272 F.2d 411 (9th Cir. 1959). *See also Kington v. United States*, 396 F.2d 9 (6th Cir. 1968), *cert. denied*, 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1969); *Miller v. United States*, 418 F.Supp. 373 (D.Minn. 1976); *Winston Bros. v. United States*, 371 F.Supp. 130 (D.Minn.1973); *Jones v. United States*, 126 F.Supp. 10 (D.D.C.1954), *aff'd on other grounds*, 228 F.2d 52 (D.C. Cir. 1955).

**6.** There are arguably several strong policy reasons for imposing a duty of notification on the government in this case. The first reason is the peculiar nature of military service. Servicemen and women have given up some measure of their freedom in order to serve their country. Unlike employees in the private sector of even government civilian employees, servicemen and women do not have unions to protect their rights and to get the word out about new benefits. Dispersed throughout the United States and the world, members of the military service are curiously dependent on the government, who is "the keeper of the records on its farflung and transitory uniformed servicemen." *Shannon v. United States*, 417 F.2d 256, 262 (5th Cir. 1969). Accordingly, service- men and women have come to rely on the armed forces to keep them abreast of benefits.

The Veterans' Insurance Act of 1974 was passed precisely to aid Retired Reservists, such as appellant's decedent, whose families would receive no survivorship benefits if the Reservist died before reaching age 60. The Senate Report on the Act noted that enlistments and retention rates in this country's military were alarmingly low, and that such benefits might be an inducement for military service. [1974] U.S. Code Cong. & Ad.News 3124 -3125.

Furthermore, the entire purpose of tort liability is risk allocation. *See* Calabresi, *Some Thoughts on Risk Distribution and the Law of Torts*, 70 Yale L.J. 499 (1961). In a system as large as the United States Army, clerical errors are bound to occur. The issue is whether the risk should be spread among all users of the system (here, the citizenry who receive the benefit of military protection and whose tax dollars would pay for any sum recovered by appellant), or whether the risk should be placed uniquely upon the person unfortunate enough to be the victim of a bureaucratic error.

It is undisputed in this case that appellant's decedent did not receive notice of his SGLI eligibility because the Army had miscoded his computer file. In light of the importance of the military in American life, the special circumstances of military service, the legislative purpose of the SGLI amendments, and the tort policy of risk allocation, it might be unduly harsh to leave appellant uncompensated if she had properly filed suit under the Federal Tort Claims Act.