722 F.2d 1362
 INDUSTRIAL HOLOGRAPHICS, INC. and Roger K. Yu, Plaintiffs-Appellants,
v.
Raymond J. DONOVAN, Secretary of Labor, and United States
Department of Labor, Employment and Training
Administration, Defendants-Appellees.
 No. 83-1057.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1983.
Decided Dec. 20, 1983.
 
 Paul J. Bargiel, Doss, Puchalski, Keenan & Bargiel, Ltd., Chicago, Ill., for plaintiffs-appellants.
 Harriet A. Gilliam, U.S. Dept. of Labor, Office of Sol., Washington, D.C., for defendants-appellees.
 Before PELL and CUDAHY, Circuit Judges, and WILKINS, Senior District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 This case presents a challenge to a refusal by the Department of Labor to certify an alien for lawful employment in the United States. Specifically, the appellants challenge the Department's regulations equating an employer's offer of "prevailing wages and working conditions" with terms which "will not adversely affect the wages and working conditions" of American workers. The appellants also object to the prevailing wage determination in this case. The district court upheld the Secretary's action and we affirm.
 
 I.
 
 2
 Under section 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(a)(14), the State Department may not issue an alien a visa for admission to the United States for purposes of employment unless the Secretary of Labor certifies that American workers are not "able, willing, qualified ..., and available" for the work, and that the employment of the alien "will not adversely affect the wages and working conditions" of similarly employed Americans. The Secretary of Labor has promulgated regulations which establish standards and procedures for the certification of alien workers under section 212(a)(14). See 20 C.F.R. Secs. 656.20 et seq. (1983). If an employer wishes to hire an alien for work in the United States, these regulations require the employer first to recruit among American workers offering the "prevailing wage" and "prevailing working conditions" to determine whether any American workers are "able, willing, qualified, and available" for the job. See 20 C.F.R. Sec. 656.21(b)(1), (3) and (9) (1980).[1] If an employer submits documentation showing it has been unable to recruit American workers on these terms, then the Secretary of Labor may certify the alien to enter the country and perform the work.
 
 
 3
 In this case, plaintiffs challenge the validity of the requirement that employers offer the "prevailing wage" when they advertise for American workers. They also challenge the application of the "prevailing wage" requirement in this case.
 
 
 4
 Plaintiff Industrial Holographics, Inc. (the "employer") manufactures and tests machinery used to make rubber tires. Plaintiff Roger K. Yu is an alien whom Industrial Holographics has sought to employ in Michigan as an export manager. The record indicates that Yu has never been in the United States. In June 1979, Industrial Holographics applied for labor certification on behalf of Yu. Industrial Holographics followed the various provisions in 20 C.F.R. Sec. 656.21 (1980), requiring it to post the job for internal recruitment, to advertise the job in newspapers and to post the job with the state employment service. On August 24, 1979, the employer submitted to the certifying officer[2] documentation showing that it had complied with the requirements of section 656.21.
 
 
 5
 The employer, however, had advertised that the salary for the job of export manager was $1,000 per month. Section 656.21 requires the employer to advertise and post the job at the "prevailing wage" and "prevailing working conditions" in order to obtain certification. 20 C.F.R. Sec. 656.21(b)(3) and (9) (1980). The Michigan Employment Security Commission (the "MESC") was responsible for determining the prevailing wage in this case, see 20 C.F.R. Sec. 656.21(f) (1980), and it determined that the prevailing wage for export managers in the area was $1,666 per month. Therefore, the certifying officer issued to the employer a Notice of Findings proposing to deny labor certification for Yu because the employer had failed to advertise the job at the prevailing wage.
 
 
 6
 After receiving the Notice of Findings, the employer agreed to repeat the advertising and recruiting process at the higher salary of $1,666 per month. The employer advertised the job at the higher salary, but it failed to comply with all of the requirements of section 656.21. Specifically, the employer did not show it had posted the job for internal recruitment at the higher salary, Sec. 656.21(b)(10), did not document the results of its recruitment efforts, Sec. 656.21(b)(15), and did not recruit for thirty days through the state employment service, Sec. 656.21(g)(1). Because the employer had failed to comply with the strict advertising requirements within the relevant time limits, the certifying officer denied the certification for Yu.[3] On review within the Department of Labor, the administrative law judge concluded that the employer had failed to comply with the regulations and that certification was properly denied.
 
 
 7
 Plaintiffs then sought review in the district court. Judge Moran granted summary judgment for the Department of Labor in an unpublished memorandum opinion. He held (1) that the Secretary of Labor had the statutory authority to issue the advertising regulations contained in section 656.21; (2) that the employer's burden of production to document compliance with the regulations was proper; (3) that the employer's noncompliance with the regulations justified the denial of labor certification; and (4) that the Department of Labor's use of the prevailing wage standard in the regulations was not arbitrary and capricious.[4]
 
 
 8
 Plaintiffs now appeal presenting three issues. First, they contend that the Secretary of Labor exceeded his statutory authority when he promulgated regulations requiring the employer to advertise the job at the "prevailing wage." Second, they argue that the prevailing wage determination in this case was incorrect. Finally, they argue that they substantially complied with the regulations and that they are therefore entitled to certification. We conclude that the Secretary had authority to promulgate the "prevailing wage" requirement, that the prevailing wage determination in this case was proper and that the denial of certification was also justified in this case. Therefore, we affirm the district court's grant of summary judgment for defendants.
 
 II.
 
 9
 Appellants contend first that the Secretary of Labor exceeded his statutory authority by requiring the employer to advertise the position at the "prevailing wage." 20 C.F.R. Sec. 656.21(b)(1), (3) and (9) (1980). The applicable statutory language says that the Secretary shall certify the alien only if his or her employment "will not adversely affect the wages and working conditions" of similarly employed workers in the United States. 8 U.S.C. Sec. 1182(a)(14)(B).
 
 
 10
 The district court relied upon our decision in Production Tool Corp. v. Employment and Training Admin., 688 F.2d 1161 (7th Cir.1982), in holding that the Secretary had statutory authority to issue the prevailing wage standard. In Production Tool, the employers argued that the Immigration and Nationality Act did not authorize the Secretary to issue any interpretative regulations under section 212(a)(14), and that the regulations could not properly impose on the employer the burden of producing evidence showing that United States workers were not "able, willing, qualified, and available." This court held that the Secretary had inherent authority to issue the regulations requiring an employer to advertise positions among American workers and imposing on an employer the burden of producing evidence showing it had complied with the advertising procedures. 688 F.2d at 1170. On this appeal, appellants present us with a narrower challenge to the same regulations. They argue only that the regulations improperly equate the statute's standard of adverse effects with the payment of wages below "prevailing wages." This precise issue was not before the court in Production Tool,[5] so we must go beyond that decision in considering the Secretary's authority to issue the prevailing wage requirement. However, the court's reasoning in Production Tool is highly relevant to this issue of statutory authority; hence, we believe that the Production Tool reasoning extends to the prevailing wage requirement.
 
 
 11
 In Production Tool this court clarified the authority under which the labor certification regulations were promulgated. The Immigration and Nationality Act does not expressly authorize the Secretary to issue regulations. However, the standards of section 212(a)(14) are quite broad. The Secretary must decide whether there are sufficient American workers who are "able, willing, qualified, and available," and whether the alien's employment would "adversely affect the wages and working conditions" of American workers. The statute leaves to the Department a broad area for the exercise of its discretion in issuing labor certificates. Where the agency must make a large number of individual discretionary decisions, it is entirely appropriate for it to issue regulations informing the public about the standards and procedures the agency intends to apply. Production Tool, supra, 688 F.2d at 1166. Those regulations simplify the administrative task and help guard against arbitrary agency action. See Silva v. Secretary of Labor, 518 F.2d 301, 310 (1st Cir.1975) (criticizing absence of regulations for certifying alien agricultural workers). As the court held in Production Tool, the labor certification regulations promote these ends, and the Secretary has inherent authority to issue them. 688 F.2d at 1167 & n. 1.
 
 
 12
 Because the Secretary did not act beyond his authority in issuing the advertising regulations, the only substantial reason appellants offer for finding the prevailing wage regulations invalid is that they are inconsistent with the language and underlying purpose of section 212(a)(14). In our view, the regulations as applied in this case are consistent with the statute and thus are not arbitrary, capricious or an abuse of discretion.[6] The Secretary has exercised appropriately his inherent power to develop standards and procedures for achieving the statute's goals.
 
 
 13
 Appellants correctly point out that neither the language of section 212(a)(14) nor the legislative history of the provision requires the Secretary to use the prevailing wage standard in determining whether an alien's employment will adversely affect wages and working conditions of American workers. The statute itself says nothing about how the Secretary should determine whether the alien's employment will have an adverse effect, and the legislative history offers little insight on this issue.[7] However, that is only the beginning of the inquiry.
 
 
 14
 The language of section 212(a)(14) does little more than identify Congressional goals: aliens should not take jobs from "able, willing, qualified, and available" American workers, and an alien's employment should not "adversely affect" the wages and working conditions of American workers. The statute leaves to the Secretary the task of developing operational standards to effect the Congressional purpose. The breadth of the statutory language and the volume of decisions virtually require the Secretary to develop systematic standards and procedures for deciding upon labor certification applications. Each year the Department of Labor receives a large number of applications for permanent labor certification.[8] A complete and thorough analysis of all relevant factors affecting the impact of each individual alien's employment on the labor market is clearly out of the question. Sound administration and concern for consistency and fairness require simplified rules of general application for imposing the statutory standards.[9]
 
 
 15
 The regulations here assume, as a general proposition, that the employment of an alien at wages below the prevailing wage will tend to affect adversely the wages and working conditions of American workers. Appellants have provided no evidence to persuade us that this general assumption is arbitrary or capricious.[10] While it may be possible to conceive of cases in which the prevailing wage standard would be inconsistent with the statute's purpose, that is not the case here.
 
 
 16
 Appellants argue that two federal decisions support their contention that the prevailing wage standard is contrary to the statute. See Naporano Metal & Iron Co. v. Secretary of Labor, 529 F.2d 537 (3d Cir.1976); Ozbirman v. Regional Manpower Adm'r, 335 F.Supp. 467 (S.D.N.Y.1971). Neither opinion persuades us that the Secretary's use of the prevailing wage standard was improper in this case.
 
 
 17
 In Naporano Metal & Iron, the Secretary denied labor certification for an alien working in the United States as a welder and scrap metal cutter. The alien was paid a wage under a collective bargaining agreement, but the Secretary found that the union wage was below the "prevailing wage" required by the predecessor regulation of section 656.21. The Third Circuit held that payment of a union wage negotiated to cover both alien and United States workers could not, as a matter of law, adversely affect the wages and working conditions of similarly employed American workers. 529 F.2d at 541.[11] The court also described the "adverse effect" standard of the statute as "substantially different" from the "prevailing wage" requirement of the regulation, but the court did not consider whether the regulation was consistent with the statute. 529 F.2d at 540 n. 9. We agree that the statutory standard differs from the regulation's standard, but the standards are not necessarily inconsistent. The regulation simply gives operational meaning to the statute's expression of Congressional purpose. The Secretary clearly has authority to issue clarifying regulations, and, as applied in this case, the regulations are not inconsistent with the statute.
 
 
 18
 Ozbirman provides appellants more direct support. There an alien was denied labor certification as an auto mechanic. The wage he was offered matched the union negotiated wage in the area, but the Secretary found the wage to be below the "prevailing wage" as required by the predecessor regulation of section 656.21. The district court remanded the matter to the Secretary on two alternative grounds. First, the court held that the "prevailing wage" standard improperly construed the term "adverse effect" and did not implement the statutory purpose. Second, the court held that the denial was an abuse of discretion because the alien's wage would have been equal to that of his co-workers and was union negotiated. 335 F.Supp. at 472. The court discussed at length the complexity of a thorough determination of whether a particular package of wages and other benefits and working conditions would adversely affect American wages and working conditions. It concluded that the "prevailing wage" standard did not adequately take into account the other relevant variables. We agree with the Ozbirman court that a truly thorough analysis of adverse effects involves factors other than wages. However, we do not agree that the Secretary of Labor is without authority to issue regulations simplifying the inquiry so that decisions will be less arbitrary and more consistent.
 
 
 19
 We conclude that the Secretary acted reasonably in giving operational content to the language of section 212(a)(14) by applying the prevailing wage standard in this case. Therefore, the Secretary acted within his legal authority in relying on the prevailing wage standard of section 656.21(b) to deny labor certification in this case.
 
 III.
 
 20
 The second issue on appeal is whether the agency's determination of the prevailing wage was correct in this case. The employer contends that the agency did not properly calculate the prevailing wage for export managers in Michigan, and that the error was arbitrary, capricious or an abuse of discretion. See 5 U.S.C. Sec. 706(2)(A). We agree that the standard of review on appeal is whether the agency's denial of certification was arbitrary, capricious or an abuse of discretion. However, the denial of certification here clearly passes this test.
 
 
 21
 The Department of Labor has promulgated regulations describing the calculation of the "prevailing wage" for labor certification. 20 C.F.R. Sec. 656.40 (1983). The section applicable to this case provides that the "prevailing wage" shall be:
 
 
 22
 The average rate of wages, that is, the rate of wages to be determined, to the extent feasible, by adding the wage paid to workers similarly employed in the area of intended employment and dividing the total by the number of such workers. Since it is not always feasible to determine such an average rate of wages with exact precision, the wage set forth in the application shall be considered as meeting the prevailing wage standard if it is within 5 percent of the average rate of wages....
 
 
 23
 20 C.F.R. Sec. 656.40(a)(2)(i) (1983).[12] In this case the MESC contacted five Michigan employers to determine the salary each paid its export manager.[13] From answers received from these inquiries, the MESC calculated that the average wage of export managers in Michigan was $1,666 per month.
 
 
 24
 Appellants argue that this calculation was improper because the MESC surveyed employers in industries other than the rubber tire machinery business. They contend that the export managers for the other employers are not "similarly employed" as the regulations require. 20 C.F.R. Sec. 656.40(a)(2)(i) (1983). However, we do not believe that the agency acted arbitrarily and capriciously in surveying the other five employers. The agency concluded that jobs with similar functions in other industries were sufficiently comparable for purposes of determining a prevailing wage. Appellants have provided no evidence showing that the other jobs are not comparable.[14]
 
 
 25
 Appellants rely on cases which are not apposite here. It is true that the prevailing wage calculation may be improper if the agency simply uses the wrong occupational category, see Reddy, Inc. v. Department of Labor, 492 F.2d 538, 544-45 (5th Cir.1974) (rate calculated for civil engineer where alien was mechanical engineer), but appellants have not shown that the job category used in this case was improper.[15] Therefore, we conclude that the agency's calculation of the prevailing wage in this case was not arbitrary, capricious or an abuse of discretion.
 
 IV.
 
 26
 Finally, appellants contend that they are entitled to labor certification because they substantially complied with the advertising regulations when they recruited at the higher salary level. After the certifying officer issued the Notice of Findings informing the employer that it was not offering the prevailing wage, the employer tried to recruit American workers at the higher wage level. The employer sought and received two extensions of time to complete its second round of advertising. The employer submitted documents to show its compliance with the regulations. However, the certifying officer found that the employer failed to show it had posted the job at the higher salary level inside its own organization, 20 C.F.R. Sec. 656.21(b)(10) (1980), that it failed to document the results of its recruitment efforts among American workers, 20 C.F.R. Sec. 656.21(b)(15) (1980), and that it failed to show it had posted the job with the local employment service for thirty days, 20 C.F.R. Sec. 656.21(g)(1) (1980). The administrative law judge also concluded that the employer failed to comply with (b)(10), (b)(15), and (g)(1).
 
 
 27
 In Production Tool, supra, this court held that the Department of Labor may give the advertising regulations effect by requiring "substantial compliance" before granting labor certification. 688 F.2d at 1170. The employer here argues that its efforts amount to substantial compliance. Appellants have not shown that the agency erred in finding that appellants did not comply with (b)(10), (b)(15) and (g)(1).[16] Therefore, we need only consider whether appellants are entitled to certification despite these failures.
 
 
 28
 We find no abuse of discretion in the agency's denial of certification where the employer failed to comply with the internal posting requirement of section 656.21(b)(10), the documentation requirement of section 626.21(b)(15) and the employment service posting requirement of section 656.21(g)(1). The internal posting requirement insures that an employer's current employees--who are already familiar with the employer's products and organization--have an opportunity to apply for the job. The requirements that the employer advertise through the local employment service and document the results of its domestic recruitment efforts provide the agency with a means for monitoring the results of the employer's recruitment efforts.[17] Therefore, we conclude that the Department of Labor did not abuse its discretion by denying labor certification because the employer failed to comply with the advertising regulations.
 
 
 29
 For the foregoing reasons, the judgment of the district court is
 
 
 30
 AFFIRMED.
 
 
 
 *
 The Honorable Philip C. Wilkins, Senior District Judge of the Eastern District of California, is sitting by designation
 
 
 [1]
 The Department of Labor amended the labor certification regulations in 1980, 45 Fed.Reg. 83926 (1980), but the changes applied only to applications received after January 19, 1981. The amendments did not affect the application in this case. The amended regulations reorganized and clarified the certification process, and they retained the "prevailing wage" requirements of the earlier regulations at issue here. See 20 C.F.R. Secs. 656.21(b)(3), (g)(4), (g)(5) and 656.40 (1983). In citations in this opinion to 20 C.F.R. Sec. 656.21, citations to the 1980 edition of the Code of Federal Regulations refer to the regulations applicable in 1979 and 1980. Citations to the 1983 edition refer to the regulations as amended effective January 19, 1981
 
 
 [2]
 The certifying officer is the regional official of the Employment and Training Administration who decides whether to grant or deny labor certification. The certifying officer's decision is then subject to review by an administrative law judge and later by the courts
 
 
 [3]
 The employer had sought and received two written extensions of time to complete advertising at the higher wage. In the administrative hearings, the employer claimed that it had received a third oral extension and that it fulfilled the requirements within the time allowed by the third extension, but the administrative law judge rejected this claim. Appellants do not challenge the law judge's finding here, so we assume that appellants did not comply with the relevant time limits
 
 
 [4]
 In reaching the first three conclusions, the district court relied on our decision in Production Tool Corp. v. Employment and Training Admin., 688 F.2d 1161 (7th Cir.1982), discussed infra
 
 
 [5]
 The prevailing wage issue may have been raised before the two district courts in Production Tool, see 688 F.2d at 1165, but this court's opinion did not address or decide the issue
 
 
 [6]
 The appropriate standard of review in this case is problematic. The Immigration and Nationality Act does not expressly authorize the Secretary of Labor to issue regulations for the application of section 212(a)(14), yet the breadth of the statutory language and indications in the legislative history suggest that Congress intended the Secretary to promulgate such rules. See Production Tool, supra, 688 F.2d at 1166-68 (discussing legislative history of section 212(a)(14)). If Congress delegates to an agency the power to make law through legislative rules, courts may uphold the rules if they are reasonably related to the purposes of the legislation, promulgated through proper procedures and not arbitrary or capricious. Production Tool, supra, 688 F.2d at 1165. If Congress has not delegated its lawmaking power, then the courts owe the agency less deference in interpreting the statute. These interpretative rules are not binding on courts, but they may have substantial persuasive force. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). Judicial review of such interpretative rules may thus be more exacting where Congress did not delegate its lawmaking power
 We follow the court in Production Tool in refraining from deciding whether these rules are "legislative" or "interpretative." See 688 F.2d at 1167 n. 1. Because the prevailing wage requirements as applied in this case meet the more exacting standard of review for interpretative rules, we need not decide whether the rules here were legislative rules promulgated under an implied delegation of rulemaking power.
 
 
 [7]
 The legislative history is discussed at length in Production Tool, supra, 688 F.2d at 1166-69. Remarks of two legislators suggest that Congress expected the Secretary of Labor to issue regulations establishing standards and procedures for labor certification. See 111 Cong.Rec. 24,227 (1965) (remarks of Sen. Kennedy); 111 Cong.Rec. 21,758 (1965) (remarks of Rep. Celler), quoted in Production Tool, supra, 688 F.2d at 1167
 
 
 [8]
 In fiscal year 1981, the Department of Labor received approximately 33,000 applications for permanent labor certification, and it granted certification in 25,763 cases. EMPLOYMENT AND TRAINING REPORT OF THE PRESIDENT 51 (1982). In fiscal year 1980, the Department received 32,800 applications and granted certification in 29,000 cases. EMPLOYMENT AND TRAINING REPORT OF THE PRESIDENT 49 (1981)
 
 
 [9]
 It is possible that the Secretary would have acted arbitrarily or capriciously if he had not promulgated and adhered to regulations for labor certification. The statutory standards of section 212(a)(14) might be impossible to apply fairly without systematic standards and procedures. See Silva v. Secretary of Labor, 518 F.2d 301, 310 (1st Cir.1975) (criticizing absence of standards for certification of alien agricultural workers). Courts have found in several contexts that administrative agencies may need to articulate standards for their decisions in order to reduce the risk of arbitrary and inconsistent action. See, e.g., White v. Roughton, 530 F.2d 750, 753-55 (7th Cir.1976) (eligibility for local welfare program); Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 596-98 (D.C.Cir.1971) (suspension of pesticide registration); Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir.1968) (selection of applicants for limited public housing supply); Historic Green Springs, Inc. v. Bergland, 497 F.Supp. 839, 851-57 (E.D.Va.1980) (designation of national historic landmarks). See also 2 K. DAVIS, ADMINISTRATIVE LAW TREATISE Sec. 7.26 (2d ed. 1979). The danger of arbitrary action in the absence of articulated standards lends weight to the contention that Congress implicitly delegated to the Secretary authority to promulgate legislative regulations under section 212(a)(14), but we need not decide that issue here, see supra note 6
 
 
 [10]
 The regulations were adopted after appropriate notice and comment procedures. See 42 Fed.Reg. 3440 (1977)
 
 
 [11]
 The Secretary amended the definition of "prevailing wage" in 1977 to reflect the Naporano Metal & Iron holding regarding union wages. See 20 C.F.R. Sec. 656.40(a)(2)(ii) (1983); 42 Fed.Reg. 3450 (1977). Because there is no union wage involved here, that provision does not apply to this case
 
 
 [12]
 The amendments of 1980 did not alter the method of calculating the prevailing wage
 
 
 [13]
 The Secretary has delegated to local employment services the task of determining the prevailing wage according to federal standards. 20 C.F.R. Sec. 656.21(e) (1983); 20 C.F.R. Sec. 656.21(f) (1980)
 
 
 [14]
 We recognize that there may be considerable margin for error in similar determinations. In this case, however, the first salary offered to Yu ($1000 per month) was only two-thirds of the lowest salary in the five company survey
 
 
 [15]
 Appellants' reliance on two cases involving Montessori school teachers is misplaced. See Ratnayake v. Mack, 499 F.2d 1207, 1213-14 (8th Cir.1974); Montessori Children's House and School, Inc. v. Secretary of Labor, 443 F.Supp. 599, 608 (N.D.Tex.1977). In both cases the employers had introduced evidence showing that the jobs of Montessori teachers differed substantially from those of public school teachers. By contrast, appellants in this case have made no attempt to show that the job offered to Yu differs from those surveyed by the MESC. The prevailing wage inquiry should be reasonably specific, but there is no reason to conclude a priori that it is improper to compare similar jobs in other industries
 
 
 [16]
 Appellants correctly argue that the agency has the discretionary power to waive some defects in compliance; however, this argument does not establish that the agency abused its discretion when it chose not to waive the defects here
 
 
 [17]
 The agency's adherence to its rules here did not improperly shift the burden of proof to the employer. Instead, because the employer never satisfied its preliminary burden of production, see Production Tool, supra, 688 F.2d at 1170, the issue of the burden of proof never arose