**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eugene T. MARKGRAF and Nancy J.
Markgraf, Defendants-Appellants.**

No. 83–2492.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1984.

Decided June 15, 1984.*

Rehearing and Rehearing En Banc
Denied Aug. 24, 1984.

---

* This opinion has been circulated among all judges of this court in regular active service. A majority did not favor a rehearing *en banc* on the question of conflicting with *Allison v. Block,* 723 F.2d 631 (8th Cir.1983). Circuit Judges Cudahy and Posner voted to grant rehearing *en banc.* Subsequent to the vote on rehearing *en banc,* the Tenth Circuit issued its opinion in *Matzke v. Block,* 732 F.2d 799 (10th Cir.1984), which agrees with *Allison.* No judge voted to reconsider in light of *Matzke.*

 

Roy T. Traynor, Traynor Law Office, Wausau, Wis., for defendants-appellants.

Stephen J. Liccione, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, COFFEY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This appeal from a judgment of foreclosure entered against appellants Eugene and Nancy Markgraf raises several issues regarding the Secretary of Agriculture's duties under 7 U.S.C. § 1981a (1982). Section 1981a provides generally that the Secretary may permit deferral of repayment or may forego foreclosure on loans granted by the Farmers Home Administration (FmHA). The district court held that the Secretary was not required to implement section 1981a at all. Thus, the Secretary did not have to consider whether to defer repayment before foreclosing on FmHA loans. We affirm the entry of the judgment of foreclosure, although for reasons different from those stated by the district court.[1]

I.

Between 1976 and 1979, the Markgrafs obtained a series of loans from the FmHA. These loans varied in purpose, amount, and terms. In May 1978, the Markgrafs began to default on their loans. The Markgrafs have not made any payments on any of their loans since March 31, 1980.

In April 1979, the FmHA district director prepared a problem case report on the Markgrafs after reviewing their account. The district director concluded that the Markgrafs' account probably would require liquidation if they failed to repay a 1979 loan. The Markgrafs failed to repay this loan.

In March 1980, the Markgrafs discussed the status of their loans with their FmHA county supervisor and requested further financing for 1980. The supervisor told the Markgrafs that he would not recommend further financing.

By letter dated August 15, 1980, the FmHA notified the Markgrafs that it was accelerating the unpaid balance of their loans.[2] It is undisputed that the Markgrafs never received notice of the availability of relief under section 1981a. The United States instituted foreclosure proceedings in November 1981.

The district court entered summary judgment of foreclosure against the Markgrafs. The district court held that the Secretary's authority to implement section 1981a was discretionary. Given that the Secretary did not have to implement the statute at all, the court ruled that he did not have to provide personal written notice of the availability of section 1981a or promulgate regulations embodying procedural and substantive standards to be used in applying section 1981a.

On appeal, the Markgrafs argue that the FmHA is required to implement section 1981a. They contend that Congress intended the Secretary of Agriculture's discretion

---

**1.** This court may affirm a district court's conclusions even where the lower court applied the wrong reasoning or relied on incorrect grounds. *Beach v. Owens-Corning Fiberglas Corp.,* 728 F.2d 407, 408 n. 1 (7th Cir.1984).

**2.** As of May 21, 1981, the unpaid principal balance of the loans was $293,109.35.

under section 1981a to extend only to whether to grant relief in individual cases. The Markgrafs assert that the FmHA must provide each borrower with personal written notice of the availability of relief under section 1981a before it decides to accelerate or foreclose on a loan. They further argue that section 1981a requires the Secretary to promulgate regulations providing procedural and substantive guidelines to be used in determining whether to grant section 1981a relief in an individual case. The Markgrafs assert that because they never received notice of the availability of relief under section 1981a and because the Secretary has not promulgated regulations, judgment of foreclosure was improper.

The United States argues that section 1981a is permissive, and therefore, the Secretary does not have to implement it. The government principally relies on the fact that the statute uses the permissive term "may." Thus, the government argues, regulations and written notice are not required. If regulations are required under section 1981a, the government maintains that existing regulations satisfy these requirements. Therefore, the United States argues, judgment of foreclosure was proper.

## II.

The first issue we address is whether the Secretary of Agriculture must implement section 1981a. It is not clear under what circumstances an administrative agency properly may determine not to implement statutory powers given it by Congress. *Compare Rank v. Nimmo,* 677 F.2d 692, 700–01 (9th Cir.), *cert. denied,* 459 U.S. 107, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982) *with id.* at 702–06 (Reinhardt, J., dissenting). We need not delineate here the precise scope of agency discretion on this issue. It is clear that an agency must implement its statutory powers where the statute itself or the legislative history indicates that Congress intended to require implementation. *Id.* at 701 (citations omitted). Our task, then, is the same as it is in any case involving statutory interpretation: to determine congressional intent. In determining this intent, courts customarily look to several factors: the language of the statute; the legislative history; and the interpretation given by the administrative agency charged with enforcing the statute. *See Director, Office of Workers' Compensation Programs v. Forsyth Energy, Inc.,* 666 F.2d 1104, 1107 (7th Cir.1981).

■ We begin, as we must, with the language of the statute itself. *Howe v. Smith,* 452 U.S. 473, 480, 101 S.Ct. 2468, 2473, 69 L.Ed.2d 171 (1981). Section 1981a provides in pertinent part:

> In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary *may permit,* at the request of the borrower, the deferal of principal and interest on any outstanding loan ... and *may* forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower.

7 U.S.C. § 1981(a) (1982) (emphasis supplied). The word "may," when used in a statute, usually gives discretion to those charged with enforcement of the statute. *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983); *see Bethlehem Steel v. Gorsuch,* 726 F.2d 356, 366 (7th Cir.1984); *Burglin v. Morton,* 527 F.2d 486, 488 (9th Cir.1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976). Section 1981a thus gives the Secretary some discretion; he need not grant deferral relief to every FmHA borrower. But this does not mean that he has absolute discretion and can refuse to implement the statute altogether.

■ Any inferences from the statutory language of section 1981a indicate that Congress intended the Secretary's discretion to extend only to whether to grant relief in individual cases and not to whether to implement the statute. First, it is signif-

icant that the deferral relief process is initiated "at the request of the borrower." The fact that the borrower initiates the process demonstrates that Congress intended the Secretary to act on a case-by-case basis. Furthermore, if a borrower makes a request, the Secretary must take some action on that request. That action is itself an exercise of discretion, and thus, the Secretary must exercise discretion in each case. Second, section 1981a provides standards for the exercise of discretion. The Secretary may grant relief upon the borrower making the required showing. Where Congress has provided express standards to guide an agency in its exercise of discretion, we will presume that Congress did not intend the agency to substitute its own standards for discretion. *See Rockbridge v. Lincoln*, 449 F.2d 567, 571 (9th Cir.1971) (where statute provides standards, agency does not have unbridled discretion to refuse to regulate). An administrative agency cannot abdicate its responsibility to implement statutory standards under the guise of determining that inaction is the best method of implementation. *See Federal Power Commission v. Texaco, Inc.*, 417 U.S. 380, 394, 94 S.Ct. 2315, 2324, 41 L.Ed.2d 141 (1974).

■ The legislative history also indicates that Congress intended the implementation of section 1981a to be mandatory. Congress passed section 1981a as part of the Agricultural Credit Act of 1978, which amended the Consolidated Farm and Rural Development Act of 1961, 7 U.S.C. §§ 1921–1996 (1982). The House Report accompanying the House version of the 1978 Act states, "[W]e find FmHA's present authorities are inadequate today to meet the credit needs of farmers who qualify for the Agency's services. The purpose of this legislation is to broaden FmHA authorities to cope with today's problems and be of greater service to farmers and the rural community." H.R.Rep. No. 986 at 22, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 1106, 1127. It is difficult to understand how section 1981a can help farmers if the Secretary refuses to implement it. Where a statute is enact-

ed to benefit a designated class of persons by allowing relief in a particular situation, we will presume in the absence of substantial evidence to the contrary that Congress intended the statute to be implemented.

Furthermore, the House Report compared section 1981a to "[c]omparable language" in the Housing Act with respect to housing loans made by the FmHA. *See* 42 U.S.C. § 1475 (1976). Section 1475 authorizes the Secretary of Agriculture, under regulations to be prescribed by him, to grant a deferral of repayment of loans upon the same showing required by the borrower under section 1981a. The Secretary has implemented section 1475. The express comparison indicates that Congress intended the Secretary to implement section 1981a.

■ Finally, the congressional debate on the 1978 Act shows an intent to make the implementation of section 1981a mandatory. During the Senate debate, Senator Eagleton stated:

I should note that the original form of my amendment gave the Secretary of Agriculture no discretion in the implementation of the loan deferral program. However, as the result of the personal assurance I have received from the Secretary of Agriculture that the loan deferral program will be carried out without interest being charged on interest, I have modified my amendment so that this deferral program will be within the Secretary's discretionary authority. I hasten to add, however, that the prohibition on the charging of interest on interest remains mandatory for this program.

124 Cong.Rec. 12133 (1978). This comment evidences that Congress intended the Secretary to implement section 1981a.

■ We deem it appropriate to give some consideration to the Secretary of Agriculture's position that section 1981a is permissive. It is a well-established maxim that courts will give substantial deference to an agency's interpretation of a statute that it is charged with enforcing. *See, e.g., United States v. Clark*, 454 U.S. 555, 102

S.Ct. 805, 70 L.Ed.2d 768 (1982); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 567, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). But the degree of deference given may vary. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37, 102 S.Ct. 38, 45, 70 L.Ed.2d 23 (1981); *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 707 F.2d 548 (D.C. Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984). Deference is more appropriate where the agency has actively interpreted the statute through rule making. *Production Tool Corp. v. Employment & Training Administration*, 688 F.2d 1161, 1167–68 (7th Cir. 1982). The degree of deference also depends on the thoroughness, validity, and consistency of the agency's reasoning. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. at 37, 102 S.Ct. at 45. Here, the Secretary of Agriculture has not engaged in any active interpretation of section 1981a. Moreover, there is no evidence in the record that the Secretary has given any reasons for the decision not to implement the statute. Thus, his interpretation is entitled to a lesser degree of deference. This does not mean that we may ignore it. But in the end, "the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute ... that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Id.* at 32, 102 S.Ct. at 42. The Secretary's interpretation that section 1981a is permissive is a factor that weighs in our decision. However, it is Congress's intent that ultimately must govern.

We note that in similar circumstances, courts have held that the failure to implement a statute containing precatory language was improper. In *Abrams v. Hills*, 547 F.2d 1062 (9th Cir.1976), *referred to district court for settlement*, 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978), the court held that the Secretary of Housing and Urban Development did not have complete discretion as to whether to implement 12 U.S.C. § 17152–1(f)(3), which provided that the Secretary "is authorized" to make operating subsidies to housing project owners. The court reviewed the legislative history and found that Congress's use of discretionary language merely demonstrated an intent to allow flexibility in individual cases. *Id.* at 1067–68.[3]

On balance, the statutory language and legislative history lead us to conclude that the Secretary of Agriculture must implement section 1981a. Thus, we reject the Secretary's interpretation of the statute as inconsistent with congressional intent. Decisions in other circuits have reached the same result. *Allison v. Block*, 723 F.2d 631 (8th Cir.1983); *United States v. Hamrick*, 713 F.2d 69 (4th Cir.1983) (per curiam).

We note that Congress is aware of the controversy as to whether the implementation of section 1981a is mandatory or discretionary. *See* 128 Cong.Rec. H605–06 (daily ed. March 2, 1982) (remarks of Rep. Daschle); 128 Cong.Rec. H6810 (daily ed. September 9, 1982) (passage of H.R. 5831, which would make section 1981a mandatory).[4] Thus, Congress may act to clarify its intent.

We turn next to the issue of whether the Secretary is required to promulgate regulations to implement sec-

3. Cf. *State Highway Comm'n v. Volpe*, 479 F.2d 1099 (8th Cir.1973) (highway appropriations statute does not give Secretary of Transportation discretion to impound funds); *Rockbridge v. Lincoln*, 449 F.2d 567, 571 (9th Cir.1971) (Commissioner of Indian Affairs does not have "unbridled discretion to refuse to regulate," but rather must exercise discretion in determining how to regulate).

4. We emphasize that we do not rely in any way on subsequent statements of legislators in our determination of congressional intent. Subsequent statements of legislators are not probative of the intent of the Congress that passed a statute. *See United States v. Clark*, 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980); *Skelton v. General Motors Corporation*, 660 F.2d 311 (7th Cir.1981), *cert. denied*, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982).

tion 1981a. An agency charged with the administration of a statute has inherent authority to issue rules informing the public of the standards it will apply in exercising its discretion. *Production Tool v. Employment & Training Administration*, 688 F.2d at 1167. Section 1981a sets forth three substantive criteria—the borrower's financial problems must be "due to circumstances beyond his control"; the borrower's inability to make repayments must be temporary; and the borrower's inability to repay must be without "unduly impairing [his] standard of living." These standards, however, are general and provide only a broad outline for the exercise of discretion. Moreover, the Secretary need not grant relief to every borrower who requests it and makes the necessary showing; we have already stated that section 1981a allows for the exercise of discretion in individual cases. The statute provides no guidelines for that discretion. Where a statute provides only generalized guidance to an administrative agency, we may reasonably assume that Congress contemplated that the Secretary would take some action to fill in the essential details. *See Production Tool v. Employment & Training Administration*, 688 F.2d at 1167 (*citing Board of Education v. Harris*, 622 F.2d 599, 613 (2d Cir.1979), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981)). In some contexts, an administrative agency must promulgate standards for the exercise of discretion to avoid arbitrary and capricious action. *See, e.g., Industrial Holographics, Inc. v. Donovan*, 722 F.2d 1362, 1367 n. 9 (7th Cir.1983). "The danger of arbitrary action in the absence of articulated standards" supports the idea that Congress intended an agency to promulgate standards. *Id.* Thus, we hold that the Secretary must articulate standards for the application of section 1981a.

■ We cannot, however, dictate the process through which the Secretary must act to articulate standards. It is a fundamental principle of administrative law that the choice between rule making and adjudication is one primarily for the discretion of the agency. *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *see NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290–95, 94 S.Ct. 1757, 1769–72, 40 L.Ed.2d 134 (1974). It is perhaps even more inappropriate for a court to interfere with an agency's choice between rule making and adjudication before that choice is made.

■ One additional fact leads us to conclude that we cannot require the Secretary to promulgate regulations. The original House version of section 1981a authorized deferral relief "under regulations prescribed by the Secretary." *See* H.Conf. Rep. No. 1344, 95th Cong., 2d Sess. 28, *reprinted in* 1978 U.S.Code Cong. & Ad. News 1176, 1187. The Senate version contained no reference to regulations. Congress enacted the Senate version. *Id.* This deletion of the express requirement of regulations, although not conclusive, indicates that Congress did not intend to mandate that the Secretary act through regulations. Thus, we conclude that we will not require the Secretary to promulgate regulations. *Accord Allison v. Block*, 723 F.2d at 637–38.[5]

Finally, we turn to the issue of whether the Secretary must provide FmHA borrowers with personal written notice of the availability of section 1981a relief before determining whether to accelerate or foreclose on a loan.

■ The general rule is that everyone is charged with notice of the contents of our federal statutes. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) ("everyone is charged with knowledge of the United States Statutes at Large"). *Cf. Emergency Disaster Loan Association v. Block*, 653 F.2d 1267, 1271 (9th Cir.1981) (government not obligated to notify persons of eligibility for benefits unless required to do so by statute). The only ex-

---

5. The Fourth Circuit in *United States v. Hamrick*, 713 F.2d 69 (4th Cir.1983), did not reach the issue of whether section 1981a required the Secretary to promulgate regulations.

ception to this rule applies when the statute itself or regulations promulgated pursuant to the statute require notice to be given. *Id. See Payne v. Block*, 714 F.2d 1510, 1520 n. 35 (11th Cir.1983).

■ Because of the policies supporting this rule, we will not lightly infer a duty to provide notice. Where Congress wishes to alter the rule and impose a duty of providing notice, it must do so in reasonably explicit terms. *See Denton v. United States*, 638 F.2d 1218, 1220 n. 3 (9th Cir. 1981). Section 1981a does not provide expressly that borrowers must receive personal written notice. Nor do we find the fact that the statute requires that the borrower request deferral relief to demonstrate that personal notice is required. In *Allison v. Block*, the court stated, "The requirement of a request by the borrower prior to consideration for section 1981a relief presupposes that the borrower has knowledge of the availability of such relief. Notice to the borrower is therefore indispensable." 723 F.2d at 634. We disagree. The requirement that the borrower request relief merely means that the Secretary is not required to consider *sua sponte* whether to grant deferral relief. This is not explicit enough to show congressional intent to vary the normal rule. Thus, FmHA borrowers are not entitled to personal written notice of the availability of deferral relief.[6]

We emphasize that we in no way preclude the Secretary from mandating, through regulation or otherwise, that the FmHA must provide borrowers with personal notice of the availability of relief under section 1981a. Indeed, we note that providing notice poses little if any administrative difficulties for the FmHA. The FmHA already sends notices to borrowers whose loans are being accelerated or foreclosed. It would be a simple matter to include notice of section 1981a. As we have stated, the purpose of the statute is to help farmers with credit problems; providing notice thus would be consistent with the congressional purpose.

■ We note that the FmHA has promulgated regulations requiring that FmHA borrowers receive notice of servicing options, including deferral, at the time that they make their loan application. The Fourth Circuit, in *United States v. Hamrick*, 713 F.2d at 71 n. 3, applied this regulation retroactively to require that FmHA borrowers receive notice of section 1981a relief. 47 Fed.Reg. 21235 (1982) (to be codified at 7 C.F.R. § 1924.57(f)(3)). This regulation requires notice of servicing options under 7 C.F.R. §§ 1951.33 & .40 (1982). These regulations were promulgated pursuant to section 1981(d). Thus, they do not require notice of relief available under section 1981a. The Markgrafs have not argued on appeal that they were entitled to relief under section 1981(d), and thus, this regulation does not help them.

### III.

■ In summary, we hold that the Secretary is required to implement section 1981a and to articulate standards to guide the exercise of discretion under the statute. However, the Secretary is not required to provide notice to FmHA borrowers of the availability of deferral relief. Because the Markgrafs failed to request deferral relief, the Secretary was not required to consider the applicability of section 1981a in their case before accelerating and foreclosing on their loans.

The Markgrafs have raised other arguments, which we determine to be without merit.

AFFIRMED.

POSNER, Circuit Judge, dissenting from the denial of rehearing en banc.

At a time when the very large number of federal court of appeals decisions being

---

**6.** We realize that this is a harsh result. However, the Supreme Court has stated that the rule that all persons are charged with notice of statutes applies "regardless of actual knowledge ...

or of the hardship resulting from innocent ignorance." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

issued every year (in excess of 10,000, of which about half are published opinions) makes it difficult for the Supreme Court to resolve all of the conflicts between circuits that ought to be resolved, we should hesitate before creating such a conflict. I do not mean that we should surrender our convictions and give a monopoly of court of appeals lawmaking to whatever circuit is, by the luck of the draw, first presented with an issue. But if the issue is not momentous, and its resolution by the previous circuit is defensible, if not necessarily certainly correct, then we ought either to defer to its decision and avoid creating a conflict or at least hear the matter en banc before creating a conflict. And if, as in this case, the first two circuits to consider the question have reached the same result, the case for deference or at least for en banc consideration is strengthened.

As the panel opinion explains, 7 U.S.C. § 1981a authorizes the Farmers Home Administration to grant relief to farmers who owe it money, in particular relief from foreclosure. The question on which the panel differs with the only other circuits to have considered it is whether the statute creates by implication a duty to notify a farmer, before foreclosing on his farm, that he can apply for relief under the statute. The Eighth Circuit held that it does, *Allison v. Block*, 723 F.2d 631, 634–36 (8th Cir.1983), and the Tenth Circuit has followed the Eighth. See *Matzke v. Block*, 732 F.2d 799, 802 (10th Cir.1984). The conclusion of these courts is plausible, though not inevitable. Even without the light cast by the legislative history reviewed in the Eighth Circuit's opinion, it seems apparent that the object of the statute is unlikely to be attained if farmers are not told about the statute when they receive their notices of foreclosure. The Eighth and Tenth Circuits did not hold that every time Congress passes a statute the enforcing agency must send out notices to all the intended beneficiaries. That would be an extreme position. But since the Farmers Home Administration has to communicate with those beneficiaries anyway in order to tell them it is about to foreclose, it ought to avoid

misleading them, and therefore it ought to add that the statute gives them an avenue of relief. It is at least plausible to infer that the enacting Congress meant to require the Administration to give such notice in these special circumstances.

It is not a compelling reply to this argument that everyone is presumed to know the contents of statutes. This is a legal fiction, and for more than 200 years we have been told that the proper office of legal fictions is to prevent, rather than to create, injustices. See 3 Blackstone, Commentaries on the Laws of England 43 (1768). It would not be much consolation to a farmer whose farm had been foreclosed without his knowing about the relief he might have gotten under section 1981a that he ought to have studied the United States Code more carefully; it is the kind of response that breeds popular disrespect for law. There ought to be a better reason for turning down his claim, such as the administrative burden to the government. But there does not seem to be any such burden. All that the approach of the other circuits requires the government to do is to add a sentence to the notice of foreclosure. The panel opinion of this circuit acknowledges that the burden is slight; the government's brief makes no contrary claim.

In rejecting the approach of the other circuits, the panel cites cases such as *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), which hold that the government cannot be estopped by its agents to assert its statutory rights. But the question here is what those rights are. If Congress in section 1981a wanted to make the Farmers Home Administration notify farmers of their rights under the section, then no one is asking that the Administration be estopped to assert its right not to notify them; it has no such right.

As is often true in matters of statutory interpretation, it is not certain what Congress intended. Maybe—though there is no indication of this—it wanted to minimize the expense of the program by keeping many of the intended beneficiaries in the

dark, or at least by letting sleeping dogs lie. Or maybe, while desiring that the administrators of the program notify the program's intended beneficiaries, Congress did not want to place them under a legal duty to do so. This reading is consistent with the fact that the statute does not impose such a duty in so many words. Yet we cannot draw a confident inference that Congress did not want to impose such a duty from the fact that it did not impose it expressly. Legislators cannot foresee and solve in advance all the problems that will arise in the practical administration of the statutes they enact. The judicial duty of statutory interpretation is not a duty merely to read; it is a duty to help the legislature achieve the aims that can reasonably be inferred from the statutory design, and it requires us to pay attention to the spirit as well as the letter of the statute.

To repeat an earlier qualification, I am not suggesting that every time Congress passes a statute those charged with administering it must send written notice of its contents to all the intended beneficaries. The question before us is more particular than that; it is not unfairly stated as whether Congress meant to authorize the Farmers Home Administration to hide the existence of the newly enacted section 1981a by omitting from the notice of foreclosure all reference to the procedure by which the recipient of the notice might be able to prevent foreclosure. Maybe this is what Congress did mean to do but the contrary interpretation of the statute by the Eighth and Tenth Circuits is neither so clearly mistaken nor so far-reaching in its consequences that we ought to indulge our own views and reject theirs without going en banc, and by rejecting create another intercircuit conflict. Although the issue is not an earthshaking one, it is not a happy situation to have a rule that entitles farmers in the states of the Eighth and Tenth Circuits to notice of their rights under section 1981a, but not farmers in the states of the Seventh Circuit. I am not sure that even the government comes out much ahead, since now it must decide whether to send different notices in different parts of the nation. Of course whatever we do the government might decide to keep litigating the issue in the remaining circuits; but if we joined the Eighth and Tenth Circuits it might decide to throw in the towel. Indeed, I hope the government does so now, by heeding the panel's suggestion that it comply throughout the nation with those circuits' ruling. But it need not; and lacking confidence that it will I respectfully dissent from the decision not to hear this case before the full court.