**CITY OF OTTAWA, ILLINOIS, City of Marseilles, Illinois, Village of Naplate, Illinois, City of Streator, Illinois, and Village of Seneca, Illinois, Plaintiffs,**

v.

**SAMMONS COMMUNICATIONS, INC., Sammons Communications of Illinois, Inc., and Arthur J. Kraus, Defendants.**

No. 87 C 1325.

United States District Court,
N.D. Illinois, E.D.

June 29, 1992.

**262**

John A. Hayner, Ottawa, Ill., for plaintiffs.

Michael E. Rigney, William Denby Heinz, Jenner & Block, Chicago, Ill., for defendants Sammons Communications, Inc. and Sammons Communications of Illinois, Inc.

Craig M. Armstrong, Armstrong & Surin, Ottawa, Ill., for defendant Arthur J. Kraus.

### ORDER

NORGLE, District Judge.

Before the court are the defendants' motions for summary judgment, and the plaintiffs' motion to remand to state court. For reasons that follow, the motions for summary judgment are denied and the motion to remand is denied.

### FACTS

The plaintiffs, five Illinois municipalities—the cities of Ottawa, Marseilles and Streator and the villages of Naplate and Seneca (together the "municipalities")—receive cable television service from one or more of the defendants, Sammons Communications, Inc., Sammons Comunications of Illinois, Inc. (together "Sammons"), and Arthur J. Kraus ("Kraus").[1] The implement-

ing agreements were all entered into prior to December 29, 1984, the date the Cable Act, 47 U.S.C. § 521 *et seq.*, was enacted. The agreements generally required the municipalities' approval before increased service rates in those municipalities could take effect.

The Cable Act, however, prohibited municipalities or other cable franchising authorities from regulating cable television service rates after December 29, 1986. *Id.*, § 543(b), (c). Local regulation of cable service rates, however, would be allowed in areas deemed "not subject to effective competition" as defined in regulations issued by the Federal Communications Commission ("FCC"). *Id.*, § 543(b)(1). Additionally, some local rate regulation of pre-existing cable systems was allowed for the first two years after the effective date of the Cable Act, October 30, 1984. *Id.*, § 543(c), 557. The Cable Act specifically superseded inconsistent provisions in any state law or local franchise agreement. *Id.*, § 556(c).

The FCC, in promulgating its initial regulations, listed each of the plaintiff municipalities as being within areas with "effective competition." *Report and Order*, 50 Fed.Reg. 18,637 (May 2, 1985); 47 C.F.R. §§ 76.33, 76.54 (1986). Prior to January 1, 1987, Sammons notified Ottawa and Marseilles that their cable service rates would increase effective on January 1, 1987. On that date, Sammons raised its rates from $7.28 to $9.50 in Ottawa and Marseilles, and by 37.9% in Streator. Also that day, Kraus raised his rates from $8.00 to $10.00 in Seneca. At some point, Sammons raised its rates in Naplate as well. These rate increases in the municipalities, and subsequent raises during the period in question, were implemented without the municipalities' approval.

On July 17, 1987, the District of Columbia Circuit found "arbitrary and capricious" the signal availability standard which the FCC utilized to determine whether there was "effective competition" within an area. *ACLU v. FCC*, 823 F.2d 1554, 1573 (D.C.Cir.1987), *cert. denied*, 485 U.S.

---

**1.** The facts set forth herein are drawn from the parties' respective statements of facts filed pursuant to Local Rules 12(m) and 12(n), and unless otherwise noted, are uncontradicted.

959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). The matter was remanded to the FCC either to provide "a reasoned explanation" of its signal availability standard or develop a new standard. *Id.* The FCC opted to revise the standard but, in announcing both the revision process and other rule changes, stated that "[a]part from these immediate amendments, we note that our existing rules remain in effect, as the court's decision in *ACLU* did not reverse them." *Further Notice of Proposed Rule Making,* MM Docket No. 84–1296, 2 FCC Rcd. 5888, 5892 n. 5 (adopted September 17, 1987).

The FCC announced a new signal availability standard on April 29, 1988, but delayed implementation of the new standard for six months. *Second Report and Order,* MM Docket No. 84–1296, 3 FCC Rcd. 2617. Under the new standard, the municipalities were not considered areas with "effective competition."

The plaintiffs' complaint was initially filed in the Circuit Court of LaSalle County, Illinois on February 6, 1987, and was then removed to this court by the defendants on February 13, 1987. The only counts still pending from the complaint are Counts I, III, V, VII and IX, all of which allege breaches of franchise contract provisions restricting rate increases to cable subscribers in the plaintiff municipalities.

### DISCUSSION

The plaintiffs' present motion to remand the case to state court essentially repeats arguments which this court rejected in denying their earlier remand motion over three years ago. *City of Ottawa v. Sammons Communications, Inc.,* No. 87 C 1325 (N.D.Ill. February 17, 1989). The latest motion is construed as a belated and unwarranted motion for reconsideration of the earlier ruling, and as such is denied.

Sammons's and Kraus's summary judgment motions, which are directed at all of the remaining counts, argue that they are entitled to retain the proceeds from the rate increases they imposed between January 1987 and November 1988. During that period, they contend, their franchises were deregulated under the applicable FCC regulations. The municipalities, however, contend that the *ACLU* decision finding the FCC's "effective competition" criteria "arbitrary and capricious," as well as the amended FCC regulations adopted as a result, should be applied retroactively. Therefore, the municipalities argue, the Sammons and Kraus franchises should not be considered deregulated during the period at issue as a matter of law, and factual issues remain regarding the amount of any refunds to which cable subscribers in the municipalities may be entitled.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence in support. *Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party must go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A "scintilla of evidence" is insufficient; the non-movant must offer evidence on which a jury could reasonably find for him. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Nevertheless, in deciding whether any genuine issues of material fact exist, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi LeIsrael, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991).

The fate of Sammons's and Kraus's arguments for summary judgment hinge on whether the *ACLU* decision or the resultant FCC signal availability/effective competition amendments should be applied retroactively. Regarding the *ACLU* decision, there is a presumption of retroactivity in civil, nonconstitutional cases. *Bennett v. Jett*, 956 F.2d 138, 140 (7th Cir.1992). Nonretroactive application of court decisions in such cases is only appropriate if (1) the decision "establishe[s] a new principle of law, either by overruling clear past precedent on which the litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed," (2) nonretroactive application would not retard operation of the new rule, in view of its "prior history" and "purpose and effect," and (3) retroactive application would create "injustice or hardship" for a party to the litigation. *Id.* (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)). The party opposing retroactive application bears the burden of showing that all three factors support prospective-only application to overcome the retroactivity presumption. *Id.*

In this case, none of the three factors require prospective-only application of the *ACLU* decision. The cable franchises in each of the five municipalities were awarded prior to enactment of the Cable Act in December 1984 and announcement of the initial FCC regulations on "effective competition" in May 1985, and well prior to the *ACLU* decision in July 1987 finding those regulations "arbitrary and capricious." Sammons and Kraus agreed to rate regulation by the municipalities under their franchise agreements. In deciding to go into business in the municipalities, they did not rely on the Cable Act or the initial FCC regulations which deregulated the franchises at issue, although they did rely on those regulations when they imposed rate increases in January 1987 and afterward without the municipalities' approval. Overall, these circumstances do not clearly favor nonretroactivity under the first, reliance-on-prior-precedent factor in the *Chevron* analysis.

Concerning the third *Chevron* factor, it does not appear that Sammons or Kraus will suffer any undue "injustice or hardship" from retroactive application of *ACLU,* or for that matter, from such application of the amended FCC "effective competition" regulations. Sammons's and Kraus's franchise agreements entitled them to reasonable rate increases. The Cable Act provisions deregulating franchises in areas where "effective competition" prevails are based on the theory that such competition will keep subscription rates reasonable without the intervention of regulators. Under the *ACLU* decision and the amended FCC regulations, however, the existence of "effective competition" was at best questionable in the five municipalities. Sammons and Kraus may have received a windfall under the initial FCC regulations. Forcing Sammons and Kraus to rebate to subscribers any portion of the disputed increases which may have been excessive would not be unjust, but would simply be forcing them to abide by the bargain they struck in the franchise agreements.

For similar reasons, the second *Chevron* factor is also consistent with retroactive application of the *ACLU* decision. The purpose of the "effective competition" rules, to regulate cable rates only where necessary to avoid abusive pricing, would be hindered by allowing cable companies to keep revenues that are later found to be excessive. Applying *ACLU* retroactively, and thereby holding that the cable systems in the municipalities were improperly deregulated, would allow inquiry into the reasonableness of Sammons's and Kraus's rates during the period at issue.

The retroactivity question, however, is complicated by the lack of an outright reversal of the initial "effective competition" regulation in the *ACLU* decision, and by the FCC's subsequent announcements. The FCC had announced in September 1987 that the initial regulation would remain in effect while it was being reviewed, and in promulgating the amended regulation in April 1988, announced that it would delay implementation for six months. The FCC did not attempt to make the amended regu-

lation retroactive, so there is no issue before the court regarding whether the FCC had authority to do so. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (statutory grant of rulemaking power does not include power to make rules retroactive unless specifically granted); *Orrego v. 833 W. Buena Joint Venture*, 943 F.2d 730, 734–36 (7th Cir.1991) (discussing *Bowen* and other cases on retroactivity of statutes and rules).

Courts generally defer to the views of an agency authorized to implement a complex federal statute, but only to the degree warranted by " 'the thoroughness, validity, and consistency of the agency's reasoning.' " *Orrego*, 943 F.2d at 736 (quoting *United States v. Markgraf*, 736 F.2d 1179, 1184 (7th Cir.1984) (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981))). Here, the FCC stated in a footnote that its initial "effective competition" regulation would remain in effect while that regulation was being revised in response to *ACLU*, but added that "[w]e do not intend to act, however, inconsistent with the [*ACLU*] court's concerns pending completion of this rule making." *Further Notice*, 2 FCC Rcd. at 5892 n. 5.

The FCC's statement arguably reflects a view that *ACLU* would not apply retroactively, which is supported by the FCC's six-month delay in implementing the new rule. On the other hand, the FCC might have merely intended that the status quo remain in effect until the amended rule took effect, after which retroactive adjustments could be made. The six-month implementation delay for the new rule may have been seen as necessary to let franchisees and franchisors know where they would stand on implementation day. The latter view is supported by the FCC's warning in connection with its July 12, 1991 announcement of another modification of the "effective competition" rules. *Report and Order and Second Further Notice of Proposed Rulemaking*, MM Docket No. 90–4 (adopted June 13, 1991). Following the FCC's determination of whether a cable operator's sta-

tus should be changed under that modified rule from regulated to unregulated, or vice versa, the status quo would remain in effect pending any appeal of the determination within the FCC. *Id.* at 39, para. 89. The FCC warned:

> However, cable operators that raise their rates during this [appeal] period do so at their peril, should the Commission subsequently affirm that the cable system does not face effective competition under the new standard. *In such circumstances, the franchising authority can rebate the increase in the cable operator's basic service rate to subscribers.*

*Id.* at 40, para. 90 (emphasis added). This warning applied to previously unregulated cable operators who were preliminarily determined to be in areas without "effective competition." *Id.* Cable operators are therefore not forced to abide by the FCC's initial rulings, pending appeal within the FCC, but the operators remain responsible for any noncompliance if the rulings are upheld.

The FCC has not explicitly stated a position on retroactivity of the *ACLU* decision, and therefore the court need not defer to the FCC on this point. The FCC has spoken more clearly on the effect of *ACLU* on the "effective competition" regulations; the FCC's decision to revise, rather than provide post-hoc justifications for, those regulations shows that the FCC considered those regulations invalid under *ACLU*. Combining this apparent FCC interpretation of *ACLU* with retroactive application of *ACLU*, the initial "effective competition" regulations become void *ab initio*.

Moreover, the FCC has indicated that it will allow the status quo to remain in effect in the face of adverse preliminary rulings, with retroactive adjustments once the issues are more fully resolved. Here, the *ACLU* decision signalled to Sammons and Kraus that their unregulated status in the municipalities was at least questionable. Based on the retroactivity analysis above, this uncertainty related back to the beginning of the "effective competition" rules found "arbitrary and capricious" in *ACLU*. The uncertainty ended with adoption of the

amended "effective competition" rules, under which the municipalities were reregulated.

In sum, the court cannot find for purposes of summary judgment that the *ACLU* decision, or the FCC's maintenance of its initial "effective competition" rules while those rules were being revised, provided anything more than a temporary safe harbor for the cable rate increases which Sammons and Kraus imposed during the turbulent period at issue. Sammons and Kraus have failed to establish, at this stage, that those increases could not be the subject of rebates or other retroactive adjustments. Accordingly, Sammons's and Kraus's motions for summary judgment are denied.

## CONCLUSION

For the above reasons, the summary judgment motions of Sammons and Kraus on Counts I, III, V, VII and IX of the plaintiffs' complaint are denied, and the plaintiffs' motion to remand to state court is also denied.

IT IS SO ORDERED.